EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Popular de Puerto Rico | |
| Peticionario | Certiorari |
| v. | 2005 TSPR 77 |
| Rafael Negrón Barbosa, su esposa Linnette Toledo Vega y la Sociedad Legal de Gananciales compuesta por ambos | 164 DPR ____ |
| Recurrido | |

Número del Caso: CC-2003-540

Fecha: 2 de junio de 2005

Tribunal de Apelaciones:

      Circuito Regional IV de Aguadilla-Mayagüez

Juez Ponente:

      Hon. Ivonne Feliciano Acevedo

Abogado del Peticionario:

      Lcdo. Luis M. Ferrer Dávila

Abogado del Recurrido:

      Lcdo. Gabriel García Maya

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Popular de Puerto Rico

    Peticionario

       v.

Rafael Negrón Barbosa, su esposa        CC-2003-540
Linnette Toledo Vega y la Sociedad
Legal de Gananciales compuesta por
ambos

    Recurrido

Opinión del Tribunal emitida por la Juez Asociada, señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 2 de junio de 2005

En esta ocasión revisamos una sentencia dictada por el Tribunal de Apelaciones, confirmando la determinación del Tribunal de Primera Instancia, Sala de Mayagüez, de desestimar con perjuicio una demanda presentada por el Banco Popular de Puerto Rico, por incumplimiento con el término de seis (6) meses provisto en la Regla 4.3(b) de las Reglas de Procedimiento Civil para diligenciar los emplazamientos a la parte demandada. Además, debemos expresarnos por primera vez sobre el requisito de la Regla 4.5 de las Reglas Procedimiento Civil que dispone que el edicto emplazando al demandado deberá

publicarse en "un periódico de circulación diaria general en la Isla de Puerto Rico".

I

El 27 de junio de 2000, el Banco Popular de Puerto Rico ("Banco" o "Banco Popular") instó ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, una demanda en cobro de dinero contra el señor Rafael Negrón Barbosa, su esposa Linnete Toledo Vega y la sociedad legal de gananciales compuesta por ambos (el matrimonio "Negrón-Toledo"). Alegó que el matrimonio Negrón-Toledo suscribieron cuatro préstamos con dicha institución los cuales estaban vencidos y eran líquidos y exigibles. El 6 de julio de 2000, la secretaría del tribunal expidió los emplazamientos correspondientes.[1]

El 6 de octubre de 2000, se presentaron en el tribunal emplazamientos negativos al no poder ser diligenciados.[2] De la declaración jurada del emplazador se desprende que éste visitó la residencia de los demandados los días 18 de julio, 9 de agosto y 4 de octubre de 2000. Surge además, que allí lo atendió la señora Irene Barbosa, madre del codemandado Rafael Negrón Barbosa, quien le indicó que desconocía el paradero de su hijo y de su nuera. El emplazador no acreditó ninguna otra gestión para lograr emplazar al matrimonio Negrón-Toledo.

---

[1] La secretaría expidió a esos efectos dos emplazamientos: uno a nombre del señor Rafael Negrón Barbosa y la Sociedad de Gananciales y el otro a nombre de la señora Linnete Toledo Vega y la Sociedad de Gananciales.

[2] Apéndice del recurso de certiorari, págs. 28-29.

El 23 de octubre de 2000, a los cuatro meses de presentada la demanda y evidentemente dentro del término para emplazar, el Banco solicitó del tribunal autorización para emplazar mediante edicto, arguyendo que las gestiones para localizar a los demandados --las visitas a la residencia-- habían sido infructuosas.

Dos meses más tarde y vencido el término de seis meses para emplazar, el tribunal de instancia notificó la siguiente orden:

> "Parte demandante ¿se hicieron otras gestiones para localizar a los demandados tales como acudir al correo, al cuartel, a la escuela más cercana, a la dirección de estos conocida, buscar en la guía telefónica? Acredite y luego se autorizará el emplazamiento por edicto."

La referida orden **fue dictada el 28 de diciembre de 2000 y notificada el 5 de febrero de 2001, todo ello fuera del término de los seis meses de la Regla 4.3 de las Reglas de Procedimiento Civil.**

El 22 de febrero de 2001, el Banco presentó su moción en cumplimiento de orden. Acompañó dicha moción con una declaración jurada del emplazador detallando otras gestiones realizadas para diligenciar los emplazamientos. De dicho documento se desprende que **las referidas gestiones se llevaron a cabo el 13 de febrero de 2001, fuera del término de la Regla 4.3(b).** En la declaración jurada se detallaron las siguientes entrevistas: al Policía Omar Méndez del cuartel de la policía de Mayagüez, al Sr. José R. Alicea, cartero de la ruta de la residencia del

matrimonio Negrón-Toledo y, a la Sra. Elisa de los Santos, Auxiliar Administrativa de la Escuela Castillo de Mayagüez.[3]

El 3 de abril de 2001, el tribunal autorizó el emplazamiento por edicto. Adviértase que en este momento han transcurrido, aproximadamente, seis meses desde que el Banco Popular solicitó emplazar por edicto y la autorización concedida por el tribunal. El edicto fue publicado en el periódico El Vocero y el Banco envió a los demandados por correo certificado con acuse de recibo, copia de la demanda y copia de los emplazamientos originales.[4] No incluyó sin embargo, copia del emplazamiento por edicto.

Así las cosas, el 15 de junio de 2001, los demandados comparecieron al tribunal y, sin someterse a la jurisdicción, adujeron que no habían sido emplazados conforme a derecho. Argumentaron que el Banco Popular no diligenció el emplazamiento dentro de los seis (6) meses de haberse presentado la demanda, así como tampoco se expidió un emplazamiento individual para la sociedad legal de gananciales. Alegaron, además, que el Banco incumplió con los requerimientos de la Regla 4.5 de las Reglas de Procedimiento Civil para emplazar por edicto ya que no se les envió copia del mismo, ni el edicto fue publicado en un periódico de circulación diaria y, finalmente, que ellos no fueron notificados individualmente.

_____

[3] Apéndice del recurso de certiorari, págs 26-27.

[4] *Id*. pág. 33.

**Diez meses mas tarde**, el 29 de abril de 2002, el tribunal de instancia dictó una orden para que el Banco mostrara causa por la cual no debía acoger el planteamiento de falta de jurisdicción de la parte demandada. El Banco replicó el 14 de mayo de 2002 y, en síntesis, adujo que el término de seis meses establecido en la Regla 4.3(b) puede ser prorrogado por el tribunal por justa causa; que fue diligente en la tramitación del pleito; y, que el tribunal tuvo ante su consideración su moción solicitando emplazamientos por edicto por espacio de seis (6) meses, sin actuar sobre la misma.

Ocho meses más tarde, el 14 de enero de 2003, el Banco presentó una moción ante el tribunal de instancia reiterando su interés de continuar con el caso y solicitó, nuevamente, que se declarara sin lugar la solicitud de desestimación de la parte demandada.

El tribunal, por voz de otra juez, dictó sentencia desestimando con perjuicio la demanda instada por el Banco. Concluyó, que las gestiones realizadas por el emplazador fueron hechas fuera del término de seis (6) meses que establece la Regla 4.3(b) de Procedimiento Civil y que no hubo justa causa para extender el mismo. Determinó, además, que no se dio cumplimiento estricto a los requisitos de la Regla 4.5 de Procedimiento Civil por no haberse enviado por correo copia de la demanda a cada demandado y porque tampoco se les remitió copia del emplazamiento por edicto. Esta sentencia **fue dictada el 13**

**de septiembre de 2002, mas no fue sino hasta el 25 de febrero de 2003 --cinco meses más tarde-- que la misma fue notificada.**

Oportunamente, el Banco solicitó la reconsideración del dictamen. Adujo, que la juez que autorizó el emplazamiento por edicto en primera instancia, debió entender que existía justa causa para prorrogar el término para emplazar y por ello, en el ejercicio de su discreción, prorrogó *de facto* el mismo. Alegó el demandante que la desestimación era una sanción drástica en su caso toda vez que no había demostrado dejadez e inercia en la tramitación del pleito. El foro de instancia declaró sin lugar la moción de reconsideración.

Insatisfecho, el Banco Popular presentó recurso de apelación. El Tribunal de Apelaciones confirmó al foro apelado. Concluyó, que el Banco había diligenciado el edicto fuera del término de seis (6) meses y que la única razón para que los demandados no hubieran sido emplazados a tiempo fue la falta de diligencia del Banco. Además se indicó en la sentencia que el Banco Popular no cumplió estrictamente con la Regla 4.5 de Procedimiento Civil al no enviar a cada demandado copia del emplazamiento por edicto y meramente "se limitó a enviar una carta dirigida al Sr. & Sra. Rafael Negrón Barbosa."

Inconforme nuevamente, el Banco Popular recurrió ante nosotros. Nos señala como único error:

> "Erró el Tribunal de Circuito de Apelaciones al determinar que el emplazamiento por edictos se

realizó luego de seis meses y en su consecuencia confirmar la sentencia original que decretó la desestimación de la demanda con perjuicio."

Expedimos el auto y contando con la comparecencia de ambas partes pasamos a resolver.

## II

### A

El emplazamiento es el mecanismo procesal que permite al tribunal adquirir jurisdicción sobre el demandado de forma tal que éste quede obligado por el dictamen que finalmente se emita. *Márquez v. Barreto*, 143 D.P.R. 137, 142 (1997). El propósito del emplazamiento es notificar a la parte demandada, a grandes rasgos, que existe una acción judicial en su contra para que si así lo desea, ejerza su derecho a comparecer en el juicio, ser oído y presentar prueba a su favor. *Rivera Báez v. Jaume Andujar*, res. 28 de junio de 2002, 157 D.P.R.___, 2002 T.S.P.R. 100, *First Bank of P.R. v. Inmobilaria. Nacional*, 144 D.P.R. 901 (1998); *Acosta v. A.B.C., Inc.*, 142 D.P.R. 927 (1997); *Banco Central Corp. v. Capitol Plaza*, 135 D.P.R. 760, 763 (1994). Por lo tanto, el método de notificación que se utilice debe ser uno que ofrezca una probabilidad razonable --a la luz de los hechos del caso-- de informarle al demandado de la acción en su contra. El emplazamiento es entonces exigencia del debido proceso de ley, por lo que se requiere estricta adhesión a sus requerimientos. *First Bank of Puerto* Rico v. *Inmobiliaria, supra.*

La Regla 4.3(b) de Procedimiento Civil dispone lo siguiente en cuanto al término para emplazar:

> El emplazamiento será diligenciado en el término de seis (6) meses de haber sido expedido. Dicho término solo podrá ser prorrogado por un término razonable a discreción del tribunal si el demandante demuestra justa causa para la concesión de la prórroga y solicita la misma dentro del término original. Transcurrido el término original o su prórroga sin que el emplazamiento hubiere sido diligenciado, se tendrá a la parte actora por desistida, con perjuicio.

Del texto de la regla y su jurisprudencia interpretativa, se desprenden los siguientes requisitos: primero, que el término para emplazar es de seis meses; segundo, que dicho término puede ser prorrogado discrecionalmente por el tribunal de instancia, aun expirado ya el plazo; tercero, que la prórroga para emplazar se autorizará solo por justa causa; y, cuarto, que el incumplimiento con el término provisto acarrea la desestimación con perjuicio de la demanda. *First Bank of P.R., supra*, pág. 914; *In re Fernández Torres,* 122 D.P.R. 859 (1988); *Ortolaza v. FEE,* 116 D.P.R. 700 (1985).

La desestimación con perjuicio que ordena la Regla 4.3(b), al igual que la desestimación bajo la Regla 39.2 de las Reglas de Procedimiento Civil, persigue sancionar la dejadez e inacción de un litigante que inicia un pleito y luego no efectúa las gestiones necesarias para adquirir jurisdicción sobre el demandado. *Banco Metropolitano v. Berríos*, 110 D.P.R. 721, 724 (1981). ("La Regla 4.3(b) es un desarrollo paralelo de la 39.2(b) sobre desestimación del pleito por inactividad, y ambas tienen el mismo

propósito de acelerar la litigación y despejar los calendarios, operando la primera en la temprana etapa del pleito"). Esta sanción, sin embargo, es la sanción más drástica que puede imponer el tribunal ante la dilación en el trámite de un caso, por lo que se debe recurrir a ella en casos extremos. El tribunal siempre debe procurar un balance entre el interés en promover la tramitación rápida de los casos y la firme política judicial de que los casos sean resueltos en sus méritos. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap.III. Véase *Datiz Vélez v. Hospital Episcopal San Lucas*, res. 22 de septiembre de 2004, 2004 T.S.P.R. 152, *Ghiggliotti v. A.S.A.*, 149 D.P.R. 902 (1999), *Valentín González v. Mun. de Añasco*, 145 D.P.R. 887 (1998); *Maldonado Ortiz v. Secretario de Recursos Naturales*, *supra*.

Cabe señalar también que la expiración del término de seis (6) meses no tiene el efecto de caducidad de la citación, ni de nulidad y mucho menos afecta la jurisdicción del tribunal. *Rosado Vda. De Rivera v. Rivera*, res. 24 de agosto de 2001, 155 D.P.R.___, 2001 T.S.P.R. 119, *Banco Metroplitano v. Berríos, supra*.

B

Por otro lado, aunque el diligenciamiento personal del emplazamiento es el método más idóneo para adquirir jurisdicción sobre la persona, por vía de excepción, las Reglas de Procedimiento Civil autorizan emplazar por edicto. Regla 4.5 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.5. Así, cuando la persona a ser

emplazada, estando en Puerto Rico, no puede ser localizada después de realizadas las diligencias pertinentes, procede que su emplazamiento se realice a través de la publicación de un edicto. *First Bank of Puerto Rico v. Inmobiliaria Nacional, supra,* págs. 916-17.

Para que proceda el emplazamiento por edicto hemos requerido que el demandante acredite, mediante declaración jurada, las diligencias realizadas para localizar y emplazar al demandando. La moción presentada debe contener hechos específicos y detallados demostrativos de esa diligencia y no meras generalidades. *Mundo v. Fuster*, 87 D.P.R. 363, 371-372 (1963). La razonabilidad de las gestiones efectuadas dependerá de las circunstancias particulares de cada caso, las cuales el juez corroborará a su satisfacción antes de autorizar el emplazamiento por edicto. *Lanzó Llanos v. Banco de Vivienda*, 133 D.P.R. 507, 515 (1993).

Autorizado el mismo por el tribunal, el demandante procurará la publicación del edicto en un **"un periódico de circulación diaria general de la Isla de Puerto Rico"** y luego --dentro de los diez días siguientes a la publicación-- enviará a la parte demandada, por correo certificado a la última dirección conocida, **copia del emplazamiento y la demanda presentada.** Estos requisitos enervan la garantía del debido proceso de ley en su vertiente procesal, de ahí que en *Reyes Martínez v. Oriental Federal Savings Bank*, 133 D.P.R. 15, 24 (1993),

señaláramos que los mismos **deben observarse estrictamente**. De lo contrario, se priva al tribunal de jurisdicción sobre la persona del demandado por lo que cualquier sentencia dictada será nula. *Ortiz v. The Crescent Trading Co.*, 69 D.P.R. 501, 504-05 (1949). Véase además, *Medina Garay v. Medina Garay*, res. 19 de mayo de 2004, 161 D.P.R.____, 2004 T.S.P.R. 75, *Rivera Báez v. Jaume Andujar*, *supra*; *Acosta v. A.B.C, Inc.*, *supra*, pág. 931.

Anteriormente, no habíamos tenido ocasión de expresarnos sobre la exigencia de la Regla 4.5 que el edicto se publique en "un periódico de circulación diaria general de la Isla de Puerto Rico."[5] Los recurridos han planteado que el peticionario incumplió con dicha exigencia porque el edicto fue publicado en el periódico El Vocero y este periódico no se publica los domingos por lo que no es uno de "circulación diaria general". Procede entonces que analicemos detenidamente el contenido y alcance de esta disposición reglamentaria.

Iniciamos señalando que el requisito de publicación de edictos en un periódico de circulación diaria general no tiene contraparte en las reglas federales de procedimiento

---

[5] La Regla 4.5 de Procedimiento Civil proviene del Art. 95 del Código de Enjuiciamiento Civil de 1904, que a su vez proviene del Art. 413 del Código de Enjuiciamiento Civil de California.

El Artículo disponía lo siguiente respecto la orden que tiene que dictar el tribunal autorizando el emplazamiento por edicto:

"La orden dispondrá que la publicación se haga en un periódico, **designándose el que con más probabilidad sirva para notificar a la persona que deba ser citada**, por un período de tiempo razonable, a lo menos una vez por semana. . . ."

civil. Ahora bien, los estatutos y las reglas procesales en las jurisdicciones estatales de Estados Unidos, que requieren la publicación de edictos en los periódicos bien para emplazar, o para notificar de una venta judicial, o para informar a la ciudadanía de un cambio de zonificación, entre otros asuntos, sí exigen que tal notificación se publique en **"un periódico de circulación general."** Ninguna de las disposiciones analizadas exigía también que la publicación fuera en un periódico que circulara todos los días.

El requisito que la notificación se efectúe en un periódico de "circulación general" persigue que la información publicada, es decir la acción judicial pendiente, tenga la mayor diseminación posible en el público en general. Ello permite la inferencia razonable que la parte afectada tuvo la oportunidad de quedar informada de la causa pendiente en su contra. Adviértase, que se cumple con los rigores del debido proceso de ley cuando el método adoptado de notificación es uno razonablemente calculado, a la luz de los hechos del caso, para dar notificación a un demandado de la acción que pende en su contra para que ésta a su vez, pueda tomar una decisión informada sobre si desea o no comparecer a defenderse. *Márquez v. Barreto*, 143 D.P.R. 137, 143 (1997); *Lanzó Llanos, supra*; *Chase Manhatan Bank, v. Polanco Martínez*, 131 D.P.R. 530 (1992); *Rodríguez v. Nasrallah*, 118 D.P.R. 93 (1986). Véase además, *Mullane v.*

*Central Hanover Bank & Trust Co*., 339 U.S. 306, 314-315 (1950).

Qué es un periódico de circulación general es una controversia que ha generado considerable jurisprudencia en la jurisdicción estatal en los Estados Unidos. Un análisis de la normativa prevaleciente demuestra que la determinación de si un periódico es o no de "circulación general", es un asunto que involucra principalmente consideraciones de **naturaleza cualitativa o sustantiva referente al contenido del periódico**, y no de naturaleza cuantitativa es decir, del tamaño o extensión de su circulación. Así, en *Great Southern Media Inc. v. Mc Dowell County*, 284 S.E.2d 457, 462 (N.C. 1981), el Tribunal Supremo de Carolina del Norte indicó: "Cases from our sister jurisdictions make clear that the term 'general circulation' when applied to newspapers refers not so much to the numerical or geographic distribution of the newspaper as it does to the contents of the paper itself. The primary consideration is whether the newspaper contains information of general interest." En igual sentido, *Burak v. Ditson*, 229 N.W. 227, 228 (Iowa 1930)("Whether a newspaper is one of general circulation is a matter of substance, and not of size."); *Foster v. Anable*, 19 P.3d 630, 633 (Ariz. 2001); *Shulansky v. Michaels*, 484 P.2d 14 (Ariz. 1971); *Moore v. State*, 553 P.2d 8 (Alaska 1976); *In re La Opinión*, 89 Cal. Rptr. 404 (1970); *Pirie v. Kamps*, 229 P.2d 927 (Wyo. 1951); *Board of Com'rs v. Greensburg*

*Times*, 19 N.E. 459 (Ind. 1939); *Shelley v. Normile*, 94 P.2d 206 (Mont. 1939); *Eisenberg v. Wabash*, 189 N.E. 301 (Ill. 1934).  Véase además, Ann. 24 A.L.R. 4th 822 y casos allí citados.

Ello no quiere decir que el tamaño de la circulación del periódico sea un factor irrelevante, lo que implica es que éste es un criterio más a considerar en la evaluación y no es, ciertamente, el determinante para concluir si un periódico es o no de "circulación general."  "The proper construction of the term 'general circulation' requires consideration of both the qualitative and the quantitative aspects of the publication." *Moore v. State*, 553 P.2d pág. 21.

Un periódico se puede considerar de circulación general **si está orientado hacia el público más diverso posible**.  De ahí que lo medular sea el tipo de noticia que publica y no el número de ejemplares que se venden.  En esta evaluación, se analizará si en el periódico se publican noticias de interés general tanto de carácter nacional como internacional; noticias diversas en áreas tales como:  política, comercio, deportes, sociales o de interés humano; si tiene una página editorial o si tiene columnistas regulares que comentan sobre asuntos de interés general y otros renglones similares.  A mayor diversidad en las noticias que se publican más variado será el público lector que se atrae, lo que a su vez permite catalogar el periódico como uno de circulación general.

Aclarado este marco doctrinal, apliquemos el mismo a la controversia ante nosotros.

III

A

Antes de comenzar propiamente con la discusión se hace necesario los siguientes señalamientos. El trámite procesal de este caso ha sido, como poco, azaroso. El expediente está plagado de dilaciones injustificadas del tribunal de instancia en atender las mociones presentadas por las partes y luego en notificar las determinaciones tomadas. A modo de ejemplo, **baste indicar que le tomó al tribunal veinte (20) meses, es decir cerca de dos años, resolver y notificar una sencilla moción de falta de jurisdicción presentada por la parte demandada donde alegó que no fue emplazada dentro del término de la Regla 4.3(b).**

Por otro lado, los "errores" en que ha incurrido la representación legal de la parte demandante en su accidentado intento de emplazar a la parte demandada, primero personalmente y luego mediante edicto, denotan un asombroso desconocimiento de los requisitos de las Reglas 4.3 y 4.5 de las Reglas de Procedimiento Civil y nuestra jurisprudencia. El proceder del tribunal de instancia así como el de la representación legal del Banco Popular, son responsables del lamentable retraso en la resolución final de este caso.

Ello a un lado, procede determinar si se justificaba la desestimación con perjuicio de la demanda instada por el

Tribunal de Primera Instancia y confirmada por el Tribunal de Apelaciones y si se cumplió con lo dispuesto en la Regla 4.5 de Procedimiento Civil. Veamos.

Conforme se desprende de la relación de hechos, el Banco Popular presentó su moción solicitando los emplazamientos por edicto **dentro del término de seis (6) meses para emplazar** dispuesto en la Regla 4.3(b). Ahora bien, la declaración jurada que acompañó la solicitud para emplazar por edicto, donde se acreditaron las gestiones llevadas a cabo para localizar a la parte demandada, era claramente insuficiente para cumplir con las exigencias de la Regla 4.3(b). Véase, *Lanzó Llanos v. Banco de la Vivienda*, *supra*. De ahí que el tribunal de instancia, correctamente, solicitara del Banco mayor especificidad respecto las gestiones realizadas por éste para emplazar a los demandados. Esta orden fue emitida y notificada transcurrido ya el término de seis meses, lo que hacía imposible que la insuficiencia de las gestiones pudiese subsanarse dentro del término reglamentario. Por lo tanto, aun cuando la responsabilidad inicial de llevar a cabo correctamente las gestiones para diligenciar el emplazamiento dentro del término reglamentario recae exclusivamente sobre el demandante, en este caso la dilación del propio tribunal contribuyó, con toda probabilidad, a que ello no pudiera ser así.

Notificado de la determinación del tribunal, el Banco se dio a la tarea de cumplir con lo ordenado. En ese

momento sin embargo y advertido que las gestiones llevadas a cabo para diligenciar los emplazamientos eran insuficientes, el Banco, como mínimo, debió haber solicitado del tribunal una prórroga para emplazar, advirtiéndole del curso procesal del caso hasta ese momento. No lo hizo. En vez, se dio a la tarea de subsanar de inmediato la omisión pasada.

Una vez el Banco le notificó de sus gestiones al tribunal, éste *sub silentio*, debió haber concluido que había justa causa para prorrogar el término de emplazamiento toda vez que autorizó que se emplazara a la parte demandada mediante edicto. *E. g.*, *Banco Metropolitano v. Berríos*, 110 D.P.R. pág. 724. Al ponderar y evaluar detenidamente el trámite procesal de este caso no podemos concluir que esta determinación del tribunal de instancia constituyera un abuso de discreción de su parte que requiriera su revocación. Ciertamente, la mejor práctica hubiera sido que el tribunal expresamente indicara que estaba prorrogando el término para emplazar y las razones para ello. Ello permite que las partes queden informados del porqué de la desviación del término reglamentario y, facilita la revisión en alzada de tal determinación ya que de esta forma el foro apelativo tendrá ante si un cuadro más completo para pasar juicio de si el tribunal *a quo* abusó de su discreción en su estimación de justa causa o negligencia excusable. *E.g.*, *Banco Metropolitano v. Berríos*, supra.

Lo cierto es que en este caso, la parte demandante no ha demostrado dejadez o abandono del procedimiento. Ha actuado con celeridad y prontitud una vez advertido de sus errores, para enderezar el torcido camino que ha labrado. Si bien es cierto que ésta ha contribuido con sus desaciertos al escarpado trámite procesal en este caso, la responsabilidad por ello no recae exclusivamente sobre sus hombros. La tardanza del tribunal en resolver y notificar las mociones presentadas, como señalamos, incluyendo la solicitud de emplazamiento por edicto, ha contribuido a complicar el curso procesal de este caso.

Adviértase, además, que la parte demandada no ha demostrado que la tardanza en el diligenciamiento de los emplazamientos le haya causado algún perjuicio. Por todo lo anterior y ante los hechos muy particulares de este caso, así como tomando en cuenta la clara política pública de que los casos se atiendan en sus méritos, revocamos la determinación tanto, del Tribunal de Primera Instancia así como del Tribunal de Apelaciones, de desestimar con perjuicio la demanda instada en este caso por incumplimiento con el término de la Regla 4.3(b). Procedía por lo tanto prorrogar el término para emplazar y autorizar el emplazamiento por edicto.

B

Ello sin embargo, no dispone de este recurso pues como vimos ya, el recurrido ha planteado también el incumplimiento del Banco Popular con la Regla 4.5 de las

Reglas de Procedimiento Civil que regula el emplazamiento por edicto.  Como recordaremos, éste arguyó que el edicto no se publicó en un periódico de circulación diaria y, que no se les envió copia del edicto publicado lo que vicia de nulidad el emplazamiento.  Veamos entonces.

Como indicamos anteriormente, la Regla 4.5 dispone que todo edicto deba publicarse en un periódico "de circulación diaria general en la Isla de Puerto Rico."  No hay duda que, a la luz de la discusión anterior, El Vocero **es un periódico de circulación general**.  En El Vocero se publican noticias de interés general para la ciudadanía.  Se cubren noticias de carácter nacional e internacional, deportes, comercio e interés humano, entre otras.  El periódico tiene una página editorial en la cual fija su posición sobre asuntos de importancia para el país.  Tiene también varios columnistas regulares que publican semanalmente sus cometarios sobre los asuntos acuciantes del país.  Además de lo anterior, éste es uno de los periódicos de mayor circulación en todo Puerto Rico.

El recurrido nos indica sin embargo, que para cumplir efectivamente con la Regla 4.5, el periódico tiene que ser uno de "publicación diaria" y, toda vez que El Vocero no se publica los domingos éste no cualifica.  No tiene razón, veamos porque.

La lectura literal que propone el recurrido de la Regla 4.5 obvia lo verdaderamente importante de la notificación a través de la publicación de un edicto en un

periódico. **Lo verdaderamente esencial de la Regla 4.5 es que el edicto se publique en un medio que logre la mayor diseminación en el público en general.** Ello es lo que permite la inferencia razonable que la parte demandada quedó informada de la acción en su contra, para garantizarle así el debido proceso de ley. La ficción que supone el emplazamiento por edicto se asienta precisamente sobre ese presupuesto. Tal exigencia se cumple si el medio en que se publicó el edicto fue uno de "circulación general". Véase, *Quiñónez Román v. Cia. ABC*, 152 D.P.R. 367, 380 (2000). Como sabemos, no es necesario para la validez de un edicto que los demandados efectivamente lo lean.

Idealmente, ese periódico de circulación general podrá también ser uno que se publique todos los días; lo principal sin embargo es que sea de circulación general. El hecho que el edicto se publique en un periódico de circulación general que circula seis días a la semana y no siete, no hace del mismo uno ineficaz. *A contrario sensu*, si el edicto se publica en un periódico que circula todos los días mas no es "de circulación general", esa publicación es insuficiente para que el tribunal pueda adquirir jurisdicción sobre la persona del demandado, por lo que el edicto así publicado sería nulo. Este tipo de publicación no permite la inferencia razonable que la parte demandada pudo quedar informada de la acción instada en su contra. **Reiteramos, lo importante para garantizarle a un**

**demandado el proceso debido es que la notificación se haga en un periódico de circulación general.** Concluimos por lo tanto, que la publicación en El Vocero del edicto en este caso cumplió a cabalidad con lo dispuesto en la Regla 4.5 de las Reglas de Procedimiento Civil.

Finalmente, el recurrido nos indica que nunca fue notificado con copia del emplazamiento por edicto por el Banco Popular ya que sólo se le envió copia de los emplazamientos originalmente expedidos y la demanda. El Banco no niega que ello es así.

La Regla 4.5 exige que el edicto que se publique contenga la siguiente información a saber: sala del tribunal de instancia donde se ventila el caso, número del caso, nombre del demandante, nombre del demandado a emplazar, naturaleza del pleito, nombre dirección y teléfono del abogado del demandante, **nombre de la persona que expidió el edicto, fecha de expedición, término dentro del cual deberá contestar la demanda y una advertencia que si no contesta la demanda "se le anotará la rebeldía y se le dictará sentencia concediendo el remedio solicitado sin mas citarle y oírle."** Esta información advierte al demandado de la naturaleza de la reclamación en su contra y, de cómo y cuándo deberá responder a la misma, de ahí la importancia de que se le envíe copia del edicto a la parte demandada. Adviértase, que un demandado emplazado por edicto cuenta con un término distinto para contestar la

demanda que aquél que ha sido emplazado personalmente. Véase, Regla 10 de las Reglas de Procedimiento Civil.

Ni en la demanda presentada en este caso ni en los emplazamientos originalmente expedidos --documentos que sí le fueron enviados a la parte demandada-- se les informa del término dentro del cual deben contestar, cuándo éste comienza a transcurrir, ni se les advierte que si no contestan la demanda se les anotará la rebeldía y se dictará la correspondiente sentencia concediendo el remedio solicitado, sin mas citarle y oírle. Estos documentos por lo tanto son insuficientes para que el demandado pueda tomar una decisión informada de si comparece o no al tribunal. Ello vicia de nulidad el emplazamiento por edicto efectuado en este caso por el Banco Popular, toda vez que se viola el proceso debido a la parte demandada.

En el pasado, hemos indicado que cuando un emplazamiento es diligenciado de manera incorrecta, el remedio apropiado no es desestimar la demanda, sino más bien ordenar que se repita el diligenciamiento. *Negrón v. Departamento de Servicios Sociales*, 105 D.P.R. 873, 876 (1977). Ello es cónsono con la clara política pública que pretende que los casos se ventilen en sus méritos y que no se le prive a una parte de su día en corte. *Ghigliotti v. A.S.A.*, 149 D.P.R. 902, 915 (1999); *Mercado v. Panthers Military Soc., Inc.*, 125 D.P.R. 98 (1990).

En vista de lo anterior, concluimos que el edicto publicado en el caso de autos es nulo por no haberse

notificado a la parte demandada con copia del referido documento como ordena la Regla 4.5. Se devuelve el caso al Tribunal de Primera Instancia para que le conceda al Banco Popular un plazo razonable para que proceda a realizar el emplazamiento correspondiente. El Tribunal de Primera Instancia queda en libertad para imponer a esta parte una sanción económica si lo estima razonable.

IV

Por los fundamentos expuestos, se revoca la sentencia emitida por el Tribunal de Apelaciones confirmando la desestimación con perjuicio de la demanda instada decretada por el Tribunal de Primera Instancia. Se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos acorde con lo aquí expresado.

Se dictará sentencia de conformidad.


                                    Anabelle Rodríguez Rodríguez
                                            Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Popular de Puerto Rico

    Peticionario

       v.

Rafael Negrón Barbosa, su esposa      CC-2003-540
Linnette Toledo Vega y la Sociedad
Legal de Gananciales compuesta por
ambos

     Recurrido

SENTENCIA

San Juan, Puerto Rico, a 2 de junio de 2005

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace forma parte integrante de la presente, se revoca la sentencia emitida por el Tribunal de Apelaciones confirmando la desestimación con perjuicio de la demanda instada decretada por el Tribunal de Primera Instancia. Se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos acorde con lo dispuesto en al Opinión que antecede.

Lo pronunció, manda el Tribunal y certifica la Secretaria el Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo