Ana Hilda Reyes Martínez, demandante y peticionaria, *v.* Oriental Federal Savings Bank y Miguez A. Pérez Berríos, demandados y recurridos.

*Número:* CE-88-468          *Resuelto:* 7 de abril de 1993

*Félix A. Ramos Cabán*, abogado de la peticionaria; *Faustino Aponte Parés*, abogado de Oriental Federal Savings Bank, recurrido; *Rafael Ortiz Carrión, Procurador General*, y *Sylvia Cancio Bigas, Procuradora General Auxiliar*, abogados del Estado Libre Asociado de Puerto Rico en comparecencia especial para defender la constitucionalidad de la Regla 69.5 de Procedimiento Civil.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

¿Es constitucional el requisito de *fianza de no residentes* de la Regla 69.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III? ¿Es susceptible de convalidarse *nunc pro tunc* un trámite judicial incompleto para adquirir jurisdicción mediante un emplazamiento mediante edictos?

Expongamos el trasfondo procesal y fáctico que origina estas interrogantes.

## I

El 20 de marzo de 1985 Oriental Federal Savings and Loan Association of Puerto Rico (en adelante Oriental) presentó en el Tribunal Superior, Sala de Humacao, una demanda para ejecutar una hipoteca contra Ana H. Reyes Martínez y su ex esposo Miguel A. Pérez Berríos (CS-85-361).

Oriental emplazó a Pérez Berríos. Ejecutó las diligencias pertinentes dirigidas a emplazar personalmente a Reyes Martínez, las cuales resultaron infructuosas, pues ella estaba en Estados Unidos. El 30 de julio de 1985 Oriental presentó una moción para emplazarla vía edictos y acompañó un *diligenciamiento negativo* del alguacil Ángel Luis Martínez sobre Ana Hilda *Pérez Reyes*, en el cual expone, únicamente, que acudió "personalmente a la residencia de la Sra. Ana Hilda Pérez Reyes, localizada en Carretera #352, Km. 2, Hm. 9, Bo. Río Cañas Abajo, Buzón #233 H de Mayag[ü]ez. Luego de personarme al sector de ocho a diez ocasiones y preguntar en el área, me informaron que esta persona no residía en la misma, por lo tanto se devuelve negativo". Apendice IV, pág. 1.

El 2 de agosto el tribunal autorizó el edicto. Ninguno de los demandados compareció. El 1ro de octubre el tribunal declaró con lugar la demanda. Después de varios trámites, el 10 de enero de 1986 se ejecutó la sentencia con la venta en subasta pública y adjudicación de la finca hipotecada a Oriental. El 29 de diciembre Oriental la vendió a Myriam Soto Berberena.

El 27 de octubre de 1987 Reyes Martínez demandó a Oriental en el mismo foro (CS-87-1466). Alegó la nulidad de esos procedimientos, reclamó la reivindicación de su propiedad y el resarcimiento de los daños. Se fundamentó en que nunca se adquirió jurisdicción sobre su persona debido a ciertos vicios en el emplazamiento. El 28 de diciembre Oriental sometió su escrito en oposición conjuntamente con varios documentos y declaraciones juradas expositivas de los trámites efectuados para emplazar a Reyes Martínez.([1]) Mediante resolución *nunc pro tunc* de 10 de febrero de 1988 —casi dos (2) años después de haberse eje-

---

([1]) Declaración jurada del emplazador Wigberto Ortiz; declaración jurada del emplazador Antonio Santiago; declaración jurada del alguacil Angel Luis Martínez; diligenciamiento negativo *enmendado* del alguacil Ángel Luis Martínez, y declaración jurada, fechada 13 de agosto de 1985, de la Sra. Virginia Shatara, Gerente de Sección de Edictos de *El Vocero de Puerto Rico*.

cutado la sentencia en el Caso Núm. CS-85-361— se enmendaron los autos. El tribunal resolvió que así se cumplió sustancialmente con las Reglas de Procedimiento Civil. Con vista a esa resolución, el 15 de abril denegó una solicitud de sentencia sumaria promovida por Reyes Martínez en la cual pedía la anulación del caso por falta de jurisdicción. Dictaminó, de ese modo, que el emplazamiento había sido "convalidado" en derecho.

Coetáneamente, al amparo de la Regla 69.5 de Procedimiento Civil, *supra*, a solicitud de Oriental le exigió a Reyes Martínez una fianza de no residente de diez mil dólares ($10,000). Oportunamente, el tribunal decretó la paralización de los procedimientos hasta tanto la prestara. Sin éxito, ella pidió el relevo de la fianza por razón de pobreza y, además, impugnó la constitucionalidad de la Regla 69.5, *supra*. Adujo discriminación, violación a la igual protección de las leyes y privación de su propiedad sin el debido proceso.([2]) Acordamos revisar.

## II

En lógica adjudicativa, atendemos primeramente el planteamiento en torno a la constitucionalidad([3]) de la fianza de no residente.([4]) En síntesis, la peticionaria Reyes

---

Además, sometió el sobre original, fechado 20 de agosto de 1985, enviado por correo certificado con acuse de recibo a la Sra. Ana Hilda Reyes Martínez a su última dirección conocida y que fuera devuelto. Dicho sobre contenía copia de la demanda y del edicto de emplazamiento, y el sobre original dirigido el 12 de diciembre de 1985 a Ana Hilda Reyes Martínez, copia del edicto de subasta, el cual fue devuelto por haberse mudado y no haber dejado dirección.

([2]) Alegó no haber asistido a presentar prueba de su condición económica debido a que para la vista de relevo de fianza e inconstitucionalidad, su incapacidad económica precisamente le impidió trasladarse a Puerto Rico.

([3]) Bajo la Regla 69.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, compareció el Procurador General para defenderla.

([4]) La Regla 69.5 de Procedimiento Civil, *supra*, dispone:

"Cuando el demandante residiere fuera de Puerto Rico o fuere una corporación extranjera, se le requerirá para que preste fianza para garantizar las costas, gastos y honorarios de abogados en que pudiere ser condenado. Todo procedimiento en el pleito se suspenderá hasta que preste la fianza, que no será menor de mil (1,000)

Martínez cuestiona su validez a base de que establece una clasificación impermisiblemente discriminatoria en favor de las personas residentes en Puerto Rico, que no tienen que prestar una fianza para litigar en nuestros tribunales. En la alternativa, argumenta su inaplicabilidad a una persona indigente no residente, incapaz de sufragar los costos directos e indirectos que conlleva.

El propósito de la Regla 69.5, *supra*, es garantizar las costas, gastos y honorarios de abogado en pleitos donde el reclamante es una persona natural no residente o una corporación extranjera. De otra forma, podría ser en extremo difícil recobrar dichas partidas más allá de nuestra jurisdicción territorial. *Pereira v. Reyes de Sims*, 126 D.P.R. 220 (1990). Así mismo, la regla intenta desalentar los litigios frívolos e inmeritorios. *Blatt & Udell v. Core Cell*, 110 D.P.R. 142 (1980). No es necesario abundar más. Detectamos unos intereses legítimos del Estado al establecer la clasificación entre litigantes residentes y no residentes. De su faz la clasificación no es arbitraria ni discriminatoria; ciertamente guarda una relación racional con los propósitos legítimos antes aludidos.

Aclarado este extremo, notamos que el ataque constitucional sobre su aplicación a litigantes indigentes tampoco viola la garantía constitucional de igualdad ante la ley ni la prohibición contra el discrimen por condición social. Art. II, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1. A esos efectos, en *Molina v. C.R.U.V.*, 114 D.P.R. 295 (1983), resolvimos que un litigante indigente que vive fuera del país "está exento de prestar fianza de extranjero, claro está, siempre que demuestre que su razón de pedir puede tener méritos". *Molina v. C.R.U.V.*, supra, pág. 298. Dicho

---

dólares. El tribunal podrá ordenar que se preste fianza adicional si se demostrare que la fianza original no es garantía suficiente, y se suspenderán los procedimientos en el pleito hasta que se hubiere prestado dicha fianza adicional.

"Transcurridos noventa (90) días desde la notificación de la orden del tribunal para la prestación de la fianza o de la fianza adicional sin que la misma se hubiere prestado, el tribunal ordenará la desestimación del pleito."

de otro modo, al tocar las puertas de nuestros tribunales los litigantes indigentes no vienen obligados a prestar este tipo de fianza.

De la resolución del ilustrado tribunal de instancia de 18 de agosto de 1988 no surge expresamente alguna determinación en cuanto a la condición de indigencia de Reyes Martínez; la misma refleja que Oriental presentó evidencia para probar lo contrario.

■  Por otro lado, la cuantía fijada de diez mil dólares ($10,000) es alta. Es un hecho no contradicho que ella perdió su propiedad *por falta de pago*. Nuestra casuística reconoce que para una persona ser acreedora a los beneficios de *indigencia*, su condición no tiene que rayar en el extremo de absoluta pobreza. *Cf. Bucaré Management v. Arriaga García*, 125 D.P.R. 153 (1990). Basta demostrar la imposibilidad real de no poder sufragar los costos que acarrea una fianza, que de ordinario conlleva la prestación de una garantía colateral. Aquilatadas las circunstancias de autos, concluimos que, por este fundamento, erró el foro de instancia al no eximirla.

### III

■  Réstanos examinar la interrogante en torno al planteamiento de nulidad del emplazamiento. La tarea conlleva recordar que el concepto de jurisdicción *in personam* está inextricablemente atado al debido proceso de ley. *Medina v. Tribunal Superior*, 104 D.P.R. 346, 352 (1975); *A.F.F. v. Tribunal Superior*, 99 D.P.R. 310, 316 (1970); *Rivera v. Corte*, 68 D.P.R. 673 (1948). A fin de cuentas, se trata de un importante mecanismo procesal que hace viable la consecución o privación de derechos sustantivos. *Núñez González v. Jiménez Miranda*, 122 D.P.R. 134 (1988); *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807 (1986). Como expusimos en *Pagán v. Rivera Burgos*, 113 D.P.R. 750, 753–754 (1983), "[e]l propósito de las reglas

que regulan el emplazamiento por edicto es brindar al demandado una óptima garantía de su derecho a ser oído. *Mundo v. Fúster*, 87 D.P.R. 363 (1963). La citación o emplazamiento es *el paso inaugural del debido proceso de ley* que permite el ejercicio de jurisdicción por el tribunal para adjudicar derechos del demandado. *Su adulteración es flagrante violación del trato justo".* (Énfasis suplido.)

Estos pronunciamientos recogieron la doctrina judicial previamente reiterada en *Claudio v. Casillas Mojica,* 100 D.P.R. 761, 772 (1972) —al citar a *Franco v. Corte,* 71 D.P.R. 686 (1950)— a los efectos de que "[l]a expedición de un emplazamiento, y su diligenciamiento conjuntamente a la demanda, así como *el cumplimiento con los requisitos exigidos para que se autorice el emplazamiento por edictos, son trámites necesarios para que un tribunal adquiera jurisdicción sobre la persona del demandado* cuando se trata de traerlo a la jurisdicción del tribunal por las causas que la ley establece para ello". (Énfasis suplido.)

Estamos ante un principio de talante universal, válido tanto aquí —*Rodríguez v. Nasrallah,* 118 D.P.R. 93, 99–100 (1986)— como en Estados Unidos.([5]) 2 *Wright & Miller, Federal Practice and Procedure: Civil 2d* Sec. 1061 (1987); *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306 (1950).

La Regla 4.5 (32 L.P.R.A. Ap. III) gobierna el emplazamiento mediante edicto. En lo pertinente, expone:

Cuando la persona a ser emplazada estuviere fuera de Puerto Rico, o estando en Puerto Rico no pudiere ser localizada después de realizadas las diligencias pertinentes, o se ocultare para no ser emplazada, o si fuere una corporación extranjera sin agente residente, *y así se comprobare a satisfacción del tribunal mediante declaración jurada, con expresión de dichas di-*

---

([5]) El método utilizado para emplazar debe ser aquel con la mayor probabilidad razonable de notificar al demandado para que se pueda defender. *Pou v. American Motors Corp.,* 127 D.P.R. 810 (1991).

Un ejemplo gráfico de esto lo encontramos en el tratamiento especial del caso *Mundo v. Fúster,* 87 D.P.R. 363 (1963), en diferentes procedimientos donde se requiere emplazamientos. R.F. Morales Cabranes, *La ejecución de hipoteca en Puerto Rico,* 43 Rev. C. Abo. P.R. 205, 211 (1982).

*ligencias, y apareciere también de dicha declaración, o de la demanda jurada presentada,* que existe una reclamación que justifica la concesión de algún remedio contra la persona que ha de ser emplazada, o que dicha persona es parte apropiada en el pleito, *el tribunal podrá dictar* una orden disponiendo que el emplazamiento se haga por un edicto. No se requerirá un diligenciamiento negativo como condición para dictar la orden disponiendo que el emplazamiento se haga por edicto. (Énfasis suplido.)

■ Este texto es claro: para que un tribunal dicte válidamente una orden que permita un emplazamiento mediante edicto, tiene que haberse intentado efectuar *previamente* un emplazamiento personal, *y después haberse sometido —y lógicamente tener el juez ante sí— una declaración jurada con la expresión de las diligencias ya efectuadas.*

■ La Regla 4.8 (32 L.P.R.A. Ap. III)(⁶) visualiza que el diligenciamiento es hecho por un alguacil; "su prueba consistirá en una certificación al efecto". Además, también dispone que "[l]a omisión de presentar prueba del diligenciamiento no surtirá efectos en cuanto a su validez". Íd. De igual modo, la Regla 4.9 (32 L.P.R.A. Ap. III)(⁷) permite que

_____

(⁶) Expone:

"La persona que diligencie el emplazamiento presentará en el tribunal la constancia de haberlo hecho, dentro del plazo concedido a la persona emplazada para comparecer. *Si el diligenciamiento hubiere sido hecho por un alguacil, su prueba consistirá en una certificación al efecto*; y si por una persona particular, ésta consistirá en su declaración jurada. En caso de que la notificación del emplazamiento se haga por edictos, se probará su publicación mediante la declaración jurada del administrador o agente autorizado del periódico, acompañada de un ejemplar del edicto publicado, y de una declaración jurada acreditativa de haberse depositado en el correo copia del emplazamiento y de la demanda. En los casos de emplazamiento comprendidos en las Reglas 4.5 y 4.7 se presentará además el acuse de recibo del demandado. La omisión de presentar prueba del diligenciamiento no surtirá efectos en cuanto a su validez. La admisión o renuncia bajo juramento por el demandado o su comparecencia hará innecesaria tal prueba." (Énfasis suplido.) 32 L.P.R.A. Ap. III, R. 4.8.

(⁷) Lee:

"En cualquier momento a su discreción y en los términos que crea justos, el tribunal puede permitir que se enmiende cualquier emplazamiento o la constancia de su diligenciamiento, a menos que se demuestre claramente que de así hacerlo se perjudicarían sustancialmente los derechos esenciales de la parte contra quien se expidió el emplazamiento." 32 L.P.R.A. Ap. III, R. 4.9.

24

*en cualquier momento*, a su discreción y en los términos que crea justos, el tribunal autorice una enmienda del emplazamiento o la constancia de sus diligenciamientos, ello sujeto a que no se perjudiquen "sustancialmente los derechos esenciales de la parte contra quien se expidió el emplazamiento". 32 L.P.R.A. Ap. III. Aunque somos conscientes de que ambas reglas dan la impresión de que todo acto, en un emplazamiento mediante edictos, puede ser mecánicamente enmendado sin mayores consecuencias de los derechos involucrados, ¿qué mayor perjuicio puede haber que omitir ese paso inaugural, crucial e indispensable? Ni el más laxo, amplio y generoso enfoque judicial permiten esa interpretación. Veamos.

En *primer* lugar, "[l]as disposiciones estatutarias para adquirir jurisdicción sobre la persona de un demandado por medio de la publicación de edictos en sustitución de notificación personal *deben observarse estrictamente*". J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1979, Vol. II, pág. 44. Véanse: *Matos v. Agraít, Juez*, 59 D.P.R. 291, 295 (1941); *Beltrán v. E.L.A.*, 102 D.P.R. 173, 175 (1974); *Rodríguez v. Nasrallah*, supra; *Banco Metropolitano v. Berríos*, 110 D.P.R. 721 (1981); *Planas v. Chambers*, 59 D.P.R. 494 (1941); *Rivera v. Rivera*, 31 D.P.R. 449 (1923); *Quintana et al. v. Aponte, Juez, y Centeno*, 26 D.P.R. 196 (1918); *Delgado v. El Registrador de Humacao*, 25 D.P.R. 486 (1917). Igual enfoque prevalece en las jurisdicciones estatales y en la federal. *Johnson v. Carlson*, 574 F. Supp. 827 (D. Tex. 1983); *Lisowski v. Schaack*, 71 F.R.D. 570 (1976); *Thompson v. Kerr*, 555 F. Supp. 1090 (D. Ohio 1982). *En Rosa v. Cantrell*, 508 F. Supp. 330, 332 (D. Wyo. 1981), se resume así la cuestión:

Cada paso de la Regla 4 [de Procedimiento Civil de Wyoming] es jurisdiccional. Una falla en cualquier parte de la regla impide que esta Corte asuma jurisdicción sobre el demandado.

Véase *Emery v. Emery*, 404 P.2d 745 (Wyo. 1965). (Traducción nuestra.)

■ *Segundo, antes* de que se autorice la publicación del edicto, la Regla 4.5, *supra, requiere que el juez compruebe a su "satisfacción"* las diligencias efectuadas para lograr el emplazamiento personal de quien en esa etapa ulterior desea emplazar mediante edicto. Esa comprobación se realiza mediante la presentación de una "declaración jurada o certificación del alguacil", suficiente en derecho. *Pagán v. Rivera Burgos*, supra, pág. 755. Significa que la declaración jurada o la certificación del alguacil debe contener hechos específicos que demuestren las diligencias efectuadas, no meras conclusiones o generalidades. Como esa declaración jurada o certificación es parte integral del procedimiento para emplazar vía edictos, un tribunal no adquiere jurisdicción si la que se presenta es insuficiente para inspirar el "convencimiento" judicial necesario. *Mundo v. Fúster*, supra, pág. 340; *McCormick v. McCormick*, 61 D.P.R. 841 (1943); *Matos v. Agraít, Juez*, supra; *Danis v. Corte Municipal*, 57 D.P.R. 830 (1940); *Goldsmith v. Villari*, 27 D.P.R. 794 (1919); *Senior Loíza Corp. v. Vento Development Corp.*, 760 F.2d 20 (1er Cir. 1985); *Hospital Mtg. Group, Inc. v. Parque Ind. Río Canas*, 653 F.2d 54 (1er Cir. 1981).

*Tercero,* es un imperativo lógico concluir que *sin* una declaración jurada o una certificación "suficiente" no puede darse el convencimiento ni la comprobación judicial requerida por la Regla 4.5, *supra*. En el caso de autos, *el discernimiento judicial se produjo con un documento insuficiente.* Esta situación inexorablemente incide de manera fatal sobre la jurisdicción, a pesar de que haya mediado erróneamente la autorización para emplazar mediante edicto. *Cerdá v. Ossorio*, 65 D.P.R. 336, 340 (1945); *Martínez v. Sánchez*, 33 D.P.R. 839 (1924). Por su naturaleza, reiteramos una vez más el cumplimiento estricto de este

requisito. *O'Sheaf v. Corte de Distrito*, 38 D.P.R. 257 (1928).

Y *cuarto*, como omisión, la insuficiencia no puede salvarse presentando la declaración jurada requerida con *posterioridad* al emplazamiento realizado.

El lenguaje de la Regla 4.8, *supra*, a los efectos de que la omisión de presentar prueba del diligenciamiento no afecta su validez, tiene por objeto impedir que la parte demandada —ya emplazada— ataque la validez del emplazamiento *por el simple tecnicismo de que la persona quien lo emplazó no hizo constar tal hecho*. Cuevas Segarra, *op. cit.*, pág. 44. Véase, además, *Maldonado v. Colón*, 68 D.P.R. 340, 341–342 (1948). No tiene otro significado. Evidentemente, las enmiendas permitidas por la Regla 4.9, *supra*, son aquellas dirigidas a subsanar *meros errores técnicos. Colón Gandía v. Tribunal Superior*, 93 D.P.R. 225, 231–232 (1966). Sería absurdo interpretar que la omisión en presentar la declaración jurada o su suficiencia *previa* para nutrir el discernimiento y la conciencia judicial, pueda a posteriori ser suplida o enmendada;[8] *se trata de un vicio grave y fatal.*

---

[8] Por su origen, existe un evidente paralelismo entre nuestras reglas y las federales. La Regla 4(h) federal, 28 U.S.C., lee:

"ENMIENDA. En cualquier momento la corte a su discreción y en términos que estimare justos, podrá permitir que se enmiende cualquier emplazamiento o la constancia de su diligenciamiento, a menos que claramente surgiere que pudieran resultar perjuicios importantes para los derechos sustanciales de la parte contra quien se expidió el emplazamiento." *Práctica Forense Federal: Reglas Federales*, New Hampshire, Equity Pub. Co., 1987, pág. 18.

A su amparo, la jurisprudencia sólo permite aquellas enmiendas que subsanen meras formalidades y no defectos "sustanciales" que tornan inválido el emplazamiento. W. Webster Barron, *Federal Practice and Procedure with Forms*, St. Paul, Rules Edition Civil and Criminal, West Pub. Co., 1960, Sec. 186, págs. 748–749. Sobre estos defectos técnicos, véanse: *Cambridge Mut. Fire Ins. Co. v. City of Claxton, Ga.*, 720 F.2d 1230 (11mo Cir. 1983), y 2 *Moore's Federal Practice* Sec. 4.44, pág. 4-416 (1986).

## IV

Esta normativa derrota la contención de Oriental. El incumplimiento jurisdiccional no era "convalidable". Aunque, ciertamente, algunas omisiones procesales en los emplazamientos son subsanables y enmendables, aquí la ausencia de la declaración jurada no lo permite. *Rodríguez v. Nasrallah*, supra; *Negrón v. Depto. Servicios Sociales*, 105 D.P.R. 873, 876 (1977). No estamos ante un vicio meramente de carácter formal o de naturaleza técnica, susceptible de ser superado a través de enmiendas oportunas.

La omisión de presentar una declaración jurada o una certificación del alguacil suficiente, que por su contenido intrínseco, debe convencer y llevar al ánimo del juez la necesidad de emplazar mediante edictos —precisamente en la etapa crucial decisoria en que se opta por denegar o autorizar la continuación de los procedimientos vía edicto— no es un vicio de mero formalismo o técnico. *Va a la médula de las garantías constitucionales del debido proceso de ley.* Su omisión privó al tribunal de jurisdicción y no podía ser subsanado por enmienda posterior. Era indispensable que el magistrado los tuviera ante sí para que, tras una cuidadosa evaluación de los criterios pertinentes, adviniera al conocimiento y convencimiento requerido por la Regla 4.5, *supra*. Sin ellos fue nula cualquier orden posterior de emplazamiento mediante edicto dependiente de ese procedimiento viciado. *A fin de cuentas, ello incidió en la validez misma del emplazamiento, no en la constancia alguna del diligenciamiento de un emplazamiento personal previo.*

En *resumen*, resolvemos que la declaración jurada o la certificación del alguacil son parte integral de la génesis del emplazamiento mediante edicto. En el caso de autos, su insuficiencia original privó al tribunal de instancia de jurisdicción *in personam* sobre la peticionaria Reyes Martínez. La jurisdicción no es algo que pueda adquirirse a

posteriori, a través de enmiendas. La falta de jurisdicción *in personam* es un impedimento infranqueable que veda todo trámite judicial y macula de nulidad el ya efectuado. Fueron nulos e inexistentes los efectuados contra la peticionaria Reyes Martínez. *Calderón Molina v. Federal Land Bank*, 89 D.P.R. 704, 709 (1963).

*Se dictará la correspondiente sentencia revocatoria.*

La Juez Asociada Señora Naveira de Rodón y los Jueces Asociados Señores Hernández Denton y Fuster Berlingeri concurrieron con el resultado sin opinión escrita.