# 2006 DTA 11

### TRIBUNAL DE CIRCUITO DE APELACIONES
### REGIÓN JUDICIAL DE BAYAMÓN

VÍCTOR RIVERA HERNÁNDEZ, SECRETARIO DEL DEPARTAMENTO
DEL TRABAJO Y RECURSOS HUMANOS EN REPRESENTACIÓN Y
PARA BENEFICIO DE JESSICA BERASTAIN
Recurridos

v.

COMTEC COMMUNICATION
Peticionario

Núm. KLAN-2005-00547

San Juan, Puerto Rico, a 31 de octubre de 2005

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Miranda De Hostos y la Juez Pabón Charneco

Miranda De Hostos, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se acude en apelación de una sentencia enmendada emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, que responsabilizó solidariamente a los coapelantes Henry Barreda Rivera y José Barreda Rivera en conjunto con Alberto Monzón, por la reclamación presentada por la apelada Jessica Berastain.

En síntesis se alega que incidió el tribunal de instancia al determinar que los coapelantes son solidariamente responsables frente a la apelada, por la sentencia que a su favor se había dictado previamente el 12 de septiembre de 2002, todo ello sin haber suficiente prueba al respecto.

Se acoge el recurso como un *certiorari* por tratarse la revisión de un dictamen sobre la ejecución de la sentencia y así se expide el auto y se confirma por los siguientes fundamentos de derecho.

### I

La recurrida Jessica Berastain obtuvo una determinación del Departamento del Trabajo y Recursos Humanos, mediante la cual se declaró, que la firma Comtec Communication (en adelante Comtec), había discriminado en su contra y le adeudaba compensación de $18,400 hasta enero de 2002 y $800 mensuales, más su duplo por ser un caso de despido por discrimen. La recurrida recurrió ante el tribunal de instancia, mediante querella por despido injustificado y discrimen por impedimento físico contra Comtec, bajo el procedimiento sumario que establece la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A sec. 3118 *et seq.* (en adelante Ley 2). (Ap. 3, págs. 5-6.) Es un hecho que no está en controversia que Comtec fue emplazada a través de su vicepresidente Alberto Monzón, el 31 de mayo de 2002 en Cataño, bajo dicho *"nombre común"* y no contestó la querella dentro del término de quince (15) días dispuesto por la Ley 2, *supra.* (*Véase*, Ap. 1, pág. 15.)

El 12 de septiembre de 2002, el tribunal de instancia dictó sentencia en la cual adjudicó la controversia y condenó a Comtec al pago a la apelada de la suma de $71,400 sin costas, gastos, ni honorarios de abogado. Tal cantidad, habría de aumentar en $1,600 mensuales, hasta que se repusiera a la recurrida en su posición. (Ap. 4, págs. 7-8.)

La recurrida Jessica Berastain, contrató abogado privado para que la representara en el proceso de ejecutar el dictamen del tribunal de instancia. Así las cosas, compareció el Lcdo. Héctor Díaz Olmo en representación de la recurrida mediante una moción al amparo de la Regla 51.7 de Procedimiento Civil, para que el tribunal de instancia declarara como deudores solidarios de la referida sentencia, a los copeticionarios Henry y José Barreda Rivera. (Ap. 1, págs. 1-3.)

Luego de varios trámites procesales, el 7 de febrero de 2005, el tribunal de instancia llevó a cabo la vista evidenciaria al respecto. La recurrida Jessica Berastain presentó como prueba testifical, su propio testimonio y el de Rocío Mendoza. Los copeticionarios no presentaron prueba alguna, pero contrainterrogaron a ambas testigos. Quedando sometido el caso para resolución, el 5 de abril de 2005, el tribunal de instancia dictó sentencia enmendada en la cual determinó que los copeticionarios eran solidariamente responsables por el dictamen que se había emitido desde el 12 de septiembre de 2002.

Según las determinaciones de hechos emitidas por el tribunal de instancia en su dictamen, Alberto Monzón era el vicepresidente de la empresa Comtec allá para el 17 de febrero de 2000. Éste, entrevistó a la recurrida Jessica Berastain para trabajar con Comtec y le indicó que había sido escogida para la posición de recepcionista y que podía renunciar al trabajo que tenía en ese momento. *"[L]a misma secretaria de él [Alberto Monzón] es quien me prepara la carta de renuncia [de la recurrida] al otro empleo."* (T.E., págs. 8-9.)

Luego de comenzar su período probatorio, el copeticionario Henry Barreda Rivera llamó a la recurrida a una reunión y le notificó que no iban a continuar con sus servicios, pues habían decidido escoger a otra persona para el puesto. La recurrida le reclamó que Alberto Monzón la había contratado, pero el copeticionario Henry Barreda Rivera le dijo que él, era quien decidía los asuntos administrativos en la empresa y no Alberto Monzón. (T.E., págs. 11-12.)

Los dos días y medio (2½) que la recurrida trabajó para los peticionarios, nunca le fueron pagados. (T.E., pág. 16.) En el foro judicial se concluyó que hubo un despido injustificado y discriminatorio, y la sentencia dictada contra Comtec el 12 de diciembre de 2002, no fue apelada y advino final y firme. Considerando tales determinaciones de hechos, el tribunal de instancia sostuvo en su dictamen sobre la ejecución de la sentencia que los copeticionarios fueron cocausantes de los daños sufridos a la recurrida y *"por lo tanto de conformidad con la jurisprudencia aplicable, su responsabilidad es solidaria"*. (Ap. 10, pág. 29.) Según surge del certificado del Departamento del Estado admitido en evidencia, Comtec no existe ni existía como corporación debidamente inscrita y registrada para la fecha en que ocurre el despido y ésta hacía negocios bajo dicho nombre. (Ap. 6, págs. 14-15.)

Inconformes con tal dictamen del foro de instancia, los copeticionarios Barreda Rivera acuden ante nos a través del presente recurso, alegando que no tienen responsabilidad civil alguna.

## II
Expuestos los hechos pertinentes, procedemos a discutir la norma jurídica aplicable.

## A
### Procedimientos de sentencia contra deudores solidarios.

La Regla 51.7 de las de Procedimiento Civil, dispone que:

*"Cuando se obtiene una sentencia contra uno o más entre varios deudores solidariamente responsables de una obligación, aquellos deudores que no fueren partes en la acción, podrán ser citados para que comparezcan a mostrar por qué causa no han de estar obligados por la sentencia de igual modo que si hubieren sido demandados desde un principio. La citación, conforme lo dispuesto en esta regla, deberá relacionar la sentencia, y requerir a la persona citada para que comparezca determinado día y hora a mostrar causa de porqué no ha de estar obligada por dicha sentencia. No será necesario entablar nueva demanda. [...].*

*Hecha la citación, el deudor citado deberá comparecer en la fecha que se indica en la citación, y en dicha vista podrá aducir cualquier defensa de hecho y derecho para eximirle de responsabilidad. Las cuestiones así planteadas podrán substanciarse como en los demás casos."* (Énfasis suplido.)

32 L.P.R.A. Ap. III.

Esta regla aplica a los casos en que se dicta una sentencia contra un deudor quien es solidariamente responsable con otros, sin ser estos últimos partes en la causa de acción que origina el pleito. En tales casos, se puede citar a estos alegados deudores solidarios para que muestren causa de porqué, no deben estar obligados por la sentencia como si hubiesen sido demandados. *Véase, Soc. de Gananciales v. Soc. de Gananciales*, 109 D. P.R. 279, 284-285 (1979).

Nuestro más alto foro ha establecido que los requisitos que deben concurrir para determinar la disponibilidad del trámite de la Regla 51.7, *supra*, son:

*"[...] (1) responsabilidad solidaria previa dimanante "de una obligación" contractual; y (2) que contra*

*quienes se invoca pudieron haber sido demandados y emplazados al iniciarse la acción. Ausente cualesquiera de estos requisitos, la regla no es aplicable."*

*Pauneto v. Núñez*, 115 D.P.R. 591, 596 (1984).

Ahora bien, la ley que protege sobre discrimen laboral define como patrono a *"toda persona natural o jurídica"*, que emplee trabajadores para realizar funciones en beneficio de su negocio o empresa. *Véase*, Art. 6, Ley Núm. 100 de 30 de junio de 1959 (en adelante Ley 100). 29 L.P.R.A. sec. 151(2); *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 494-496 (1985). (Casos citados.)

Todo patrono que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo o trabajo por razón de edad, raza, color, religión, sexo, origen social o nacional o condición social, incurrirá en responsabilidad civil. **El patrono, ya sea como persona natural si así realiza el negocio o empresa, o como ente jurídico en casos de corporaciones, es responsable civilmente por los daños causados en violación a dicho estatuto.** *Id.*; *Cf. Bruno López v. Motorplan, Inc. y otros*, 134 D.P.R. 111, 121-122 (1993). (Casos citados.)

**B**
**Las corporaciones y la responsabilidad solidaria**

*La Ley General de Corporaciones de 1995, dispone en su Artículo 1.06 inciso (c) que:*

*"[...]*

*Todas las personas que actúen como corporación sin autoridad para ello, y teniendo conocimiento de dicha situación, **serán responsables solidariamente de todas las deudas y obligaciones incurridas o asumidas como resultado de dicha actuación. [...]"*. (Énfasis suplido.)

14 L.P.R.A. sec. 2606.

El legislador, al incluir el inciso (c) del Artículo 1.06, *supra*, dispuso *"sobre quién debe responder cuando una entidad falla en cumplir los requerimientos exigidos para operar una corporación [...]"*. *Véase*, Informe de la Comisión de Reformas Gubernamentales, 12ma. Asamblea Legislativa, 5ta. Sesión Ordinaria, 1995, págs. 110-111, nota 2. Cabe señalar que el no satisfacer los requisitos de incorporación establecidos en la ley, *"sólo afecta al Estado, y no a otros terceros que pudieran haber efectuado transacciones con una supuesta corporación"*. *Véase*, Dailey, *Recent Decisions*, 53 Mich. L. Rev. 283, 284 (1954).

Por lo tanto, la clara intención del legislador al aprobar la Ley General de Corporaciones de 1995, fue eliminar las doctrinas de corporaciones de *facto* y *estoppel* en el derecho corporativo en nuestra jurisdicción, imponiéndole responsabilidad solidaria a las personas que lleven a cabo negocios a nombre de una corporación inexistente, sobre las deudas y obligaciones que así contraigan. Todo ello, bajo el fundamento que la ley de corporaciones aprobada en el 1995, simplifica y facilita el proceso de incorporación y el argumento de las dificultades por ley para crear un ente corporativo ya no es válido, para levantar la defensa de corporación de *facto*. *Véase*, Carlos E. Díaz Olivo, *Derecho Corporativo Corporaciones*, Publ. Puertorriqueñas, Ed. 1999, págs. 47-52.

En resumen, bajo el estatuto vigente de corporaciones, ya no existe la doctrina de corporación de *facto* en nuestro ordenamiento jurídico, según creada por los tribunales, para eximir de responsabilidad a los que realizan negocios en nombre de una corporación *"pendiente de creación"*. Se consideraba por los tribunales una corporación de *facto* como aquélla que hubiese otorgado y presentado el certificado de incorporación ante el

Departamento de Estado y que *"sólo falta cumplir con algunos requisitos que la ley exige."* *Véase, Cordero v. Supermercado San Juan, Inc.,* 103 D.P.R. 783, 786 (1975); *Timberline Equi. Company, Inc. v. Davenport,* 514 p. 2d 1109 (Or. 1973).

De otra parte, el Artículo 1090 del Código Civil establece que la solidaridad no se presume; es decir, que en un contrato si no se expresa claramente la intención de que la obligación sea solidaria, ésta se presumirá mancomunada. 31 L.P.R.A. sec. 3101. La solidaridad debe derivarse, ya de una expresa convención de las partes, o del mandato legislativo. *Campolieto v. Anaya,* 142 D.P.R. 582, 597 (1998); *Caribbean Ins. Co. v. Tribunal de Distrito,* 99 D.P.R. 91, 95 (1970).

En cuanto a las acciones contra los deudores solidarios, el Código Civil, en su Artículo 1097 dispone:

*"El acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos ellos simultáneamente. Las reclamaciones entabladas contra uno no serán obstáculo para las que posteriormente se dirijan contra los demás, mientras no resulte cobrada la deuda por completo."*

31 L.P.R.A. sec. 3108. *Véase,* además, *Cámara Insular Etc. v. Anadón,* 83 D.P.R. 374, 382 (1961).

## C
### El contrato de sociedad

El Código Civil reconoce en su Artículo 1556, que dos (2) o más personas mediante un contrato de sociedad, *"se obligan a poner en común dinero, bienes o industria con ánimo de partir entre sí las ganancias".* 31 L.P.R.A. sec. 4311.

Una vez perfeccionado el contrato de sociedad, nuestro ordenamiento procesal civil dispone sobre el procedimiento para emplazar a los miembros de tal sociedad. Específicamente, la Regla 15.3 de Procedimiento Civil, *supra,* dispone sobre los demandados bajo un nombre común que:

*"Cuando dos o más personas operen un negocio bajo un nombre común, comprenda éste o no los nombres de dichas personas, éstas podrán ser demandadas bajo el referido nombre común, siendo suficiente emplazar a una de ellas."*

Por no existir pronunciamiento alguno por el Tribunal Supremo sobre la Regla 15.3 de Procedimiento Civil, procedemos a exponer los comentarios que de la misma hacen dos distinguidos profesores de las ciencias jurídicas.

En su obra de Derecho Procesal Civil, el Lcdo. Rafael Hernández Colón expone que:

*"Las R. 15.3, 1979, y R. 15.3, PRPC 1996, establecen una excepción a la regla de la necesidad de personalidad jurídica para comparecer a juicio.* **Dispone que cuando dos o más personas operan un negocio bajo un nombre común, comprenda éste o no los nombres de dichas personas, éstas podrán ser demandadas bajo el referido nombre común siendo suficiente emplazar a una de ellas.** *Nótese que esta excepción opera únicamente en aquellos casos en que un negocio es operado por dos o más personas y únicamente cuando las dos o más personas son partes demandadas."* (Énfasis suplido.)

Rafael Hernández Colón, *Derecho Procesal Civil,* Cap. 11, Sec. 1114, Michie de Puerto Rico, San Juan, P.R. 1997, pág. 107.

De otra parte, el Dr. José A. Cuevas Segarra expresa que:

*"Los Proyectos de Reglas no propusieron enmiendas a esta regla y la misma no ha sufrido cambios desde su aprobación en 1979. La misma no tiene equivalente en las reglas federales."*

Esta regla se refiere únicamente a personas demandadas que operen un negocio bajo un nombre común. **En tal caso no es necesario demandarlas por su propio nombre. Basta con que se utilice el nombre común y que se emplace a una sola de ellas.** Esta y la siguiente regla tienen una numeración que no corresponde a la de las reglas anteriores en vista de que la Regla 15.3 de 1958 fue eliminada mediante la Ley Núm. 100 de 30 de junio de 1975. Esa era la regla sobre la incapacidad de la mujer casada.

Una entidad no puede demandar con un pseudónimo, sino con su propio nombre, como parte realmente interesada. *In re: South Central States Bakery Products*, 86 F.R.D. 407, 411 N.4 (1980). (Énfasis suplido.)

Dr. José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo I, **Publicaciones J.T.S.**, 2000, pág. 363.

Respecto a la interpretación de esta regla, basta señalar que *"el lenguaje claro de la ley es la mejor expresión de la intención legislativa." Matos v. Junta Exam. Ing.*, opinión de 20 de septiembre de 2005, **2005 J.T.S. 143**, pág. 238. (Casos citados.)

## D

### Criterios de la revisión

Por último, en nuestra función apelativa, se impone la doctrina de deferencia la cual nos exige no intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que hizo el juzgador de los hechos al emitir su sentencia, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto, en la apreciación de la prueba. *López Delgado v. Cañizares*, opinión de 5 de octubre de 2004, **2004 J.T.S. 165**, pág. 299; *Belk v. Martínez*, 146 D.P.R. 215, 232 (1998).

## III

### Aplicación de la norma jurídica

Surge de la prueba ante el foro de instancia que los copeticionarios Henry y José Barreda Rivera y Alberto Monzón, fueron los que contrataron a la recurrida para realizar el trabajo de recepcionista en la compañía o negocio bajo el nombre de Comtec. La prueba testifical presentada por la apelada estableció que Alberto Monzón era vicepresidente y Henry Barreda Rivera fungía como presidente de Comtec al momento de los hechos, mientras que José Barreda Rivera ocupaba un puesto gerencial en dicha compañía. (*Véase*, T.E., págs. 8, 11-15.)

Las posiciones ocupadas por los copeticionarios y sus actuaciones en la empresa Comtec, establecen su relación contractual y responsabilidad solidaria con los negocios que realizaron en su nombre. Por lo tanto, si consideramos que sus actuaciones eran bajo una supuesta corporación, no pueden levantar la defensa de corporación de *facto* por no tener vigencia, y además no hubo prueba alguna que sustentara que Comtec hubiese hecho gestión para incorporarse ante el Departamento de Estado. Comtec no era un ente corporativo, pues no estaba inscrito ni registrado como tal en el Departamento de Estado. Los copeticionarios fungían como sus dueños y actuaban como una *"corporación sin autoridad para ello"*, teniendo éstos conocimiento de tal realidad jurídica.

Por otra parte, si consideramos que Comtec operaba el negocio sin estar incorporado y bajo un *"nombre común"*, sus dueños responden en su carácter personal por el despido como patronos bajo la legislación laboral. Ley 100, *supra*. Sobre este particular, surge de los autos que Alberto Monzón como vicepresidente de Comtec, aceptó que fue notificado y emplazado de la querella que se había instado en su contra por el Departamento del

Trabajo y Recursos Humanos. (*Véase*, Ap. 1, págs. 1 y 7; Ap. 6, pág. 15.) Ante ello, si consideramos a Comtec como un negocio no incorporado que realizaba operaciones bajo un "*nombre común*", ésta fue debidamente emplazada el 31 de mayo de 2002, mediante una de las personas que así actuaron, en particular a través de Alberto Monzón. Por lo tanto, los copeticionarios Barreda Rivera y Alberto Monzón podían ser demandados bajo dicho nombre común de Comtec Communications. No se requería una alegación específica en la querella sobre la responsabilidad de los copeticionarios Barreda Rivera y Alberto Monzón. Regla 15.3 de Procedimiento Civil, *supra.*

Por último, quedó demostrado a su vez por la recurrida Jessica Berastain, la existencia del segundo requisito jurisprudencial sobre solidaridad; a saber, que los demás copeticionarios pudieron haber sido demandados y emplazados al iniciarse la querella que dio lugar a la sentencia por discrimen, emitida el 12 de septiembre de 2005. *Pauneto v. Núñez, supra.*

Concluimos bajo cualesquiera de los supuestos jurídicos antes discutidos que se estableció la relación contractual u obligacional entre ambos litigantes, patrono y empleado. Además, se estableció la responsalilidad solidaria entre los copeticionarios Henry y José Barreda Rivera y Alberto Monzón con la empresa Comtec, como lo requiere la norma vigente, tanto sustantiva bajo la Ley General de Corporaciones de 1995, la legislación laboral aplicable, así como procesal, bajo las Reglas de Procedimiento Civil. En la vista celebrada, Comtec no presentó prueba alguna para rebatir o impugnar la prueba presentada por la recurrida sobre todos los extremos.

En conclusión, Comtec no podría alegar ser una corporación de *facto* para eximir a los copeticionarios de su responsabilidad solidaria como lo dispone la ley o, en la alternativa, que no fue emplazado. Una vez emitida la sentencia contra Comtec, la cual advino final y firme, los copeticionarios que actuaron y realizaron negocios con conocimiento de la inexistencia de tal corporación y en todo caso bajo un "*nombre común*", haciendo negocios, responden solidariamente de sus deudas y obligaciones. Valga señalar que tampoco los copeticionarios y Alberto Monzón, rebatieron el hecho que realizaron negocios bajo el nombre común de Comtec. (*Véase*, T.E., págs.7-8, 11-15.)

La acreedora en este caso, la recurrida Jessica Berastain, puede ir contra cualesquiera de los deudores solidarios de Comtec a cobrar la sentencia sin que éstos hubiesen sido partes en el pleito, según lo dispone la Regla 51.7 de Procedimiento Civil, *supra.* Resolver lo contrario sería dejar sin efecto el claro principio de solidaridad antes discutido.

**IV**

Por los anteriores fundamentos, un tanto distintos, se expide el auto de *certiorari* y se confirma la resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Se ordena la ejecución de la sentencia.

El Juez Arbona Lago disiente por escrito.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez,
Secretaria del Tribunal de Apelaciones

San Juan, Puerto Rico, a 31 de octubre de 2005

En la causa DPE2002-0112 ante el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), sólo se demandó a **COMTEC COMMUNICATION (Comtec)** y para tratar de proveer jurisdicción al tribunal se citó al Sr. Alberto Monzón, como *"vicepresidente"*. Ante la incomparecencia de COMTEC, como única parte demandada, el 12 de septiembre de 2002, el TPI dictó sentencia en rebeldía en su contra por la suma de $71,400.00, cantidad que aumenta en $1,600.00 mensuales *sine die*.

Debido a que Comtec en realidad no existe y nunca ha existido **como ente jurídico** o **civil**, no tiene bienes y tal dictamen no pudo, ni puede ser ejecutable. Así las cosas, el 27 de febrero de 2004, la parte demandante optó por acudir a la Regla 51.7 de Procedimiento Civil, 32 LPRA Ap. III, R. 51.7, con el propósito de extender la *"sentencia"* en contra de Comtec, a los señores Alberto Monzón, Henry Barreda y José Barreda, como si se tratara de deudores solidarios o personas civiles originalmente obligados en la previamente señalada sentencia en rebeldía del 12 de septiembre de 2002 contra Comtec, la que entonces se catalogó como *"final y firme"*.

Finalmente, mediante *"Sentencia Enmendada"* del 5 de abril, archivada en autos copia de su notificación el 8 de abril de 2005, el TPI dispuso como sigue:

## *"SENTENCIA*

*Se dicta sentencia declarando con lugar la solicitud de la demandante y en su consecuencia se incluye como deudores solidarios en la sentencia dictada en el presente caso los señores Alberto Monzón, Henry Barreda y José Barreda. Se hace constar que dicha sentencia es por la suma de $71,400.00 más $1,600.00 mensuales por cada mes que transcurra sin que la hayan repuesto en su trabajo. Hasta el mes de febrero del 2005 la cantidad mensual acumulada ascendía a $65,600.00 lo cual sumado a la cantidad base de $71,400.00 da un total de $137,000.00 hasta dicha fecha. [...]"*

Apelado dicho dictamen en el expediente del epígrafe, la mayoría lo confirma. No puedo concurrir con el elocuente voto mayoritario.

Es norma cardinal, de orden sustantivo como procesal, que para ser parte **demandante** o **demandada** en un trámite judicial, es primero menester ser persona (objeto de derecho) civil o jurídica. A tal respecto, la Parte I del Código Civil, *"Distribución de las Personas"*, en sus artículos 24 y 27 lo regula de la siguiente manera:

*"El nacimiento determina la personalidad y capacidad jurídica. Es nacido el ser humano que viva completamente desprendido del seno materno. – Código Civil, 1930, art. 24, 31 LPRA 81.*

*Son personas jurídicas:*

*(1) Las corporaciones y asociaciones de interés público, con personalidad jurídica reconocida por la ley.*

*Su personalidad empieza desde el instante mismo, en que con arreglo a derecho, hubiesen quedado válidamente constituidas.*

*(2) Las corporaciones, compañías o asociaciones de interés particular, sean civiles, mercantiles o industriales, a las que la ley conceda personalidad jurídica. – Código Civil, 1930, art. 27 31 LPRA 101."*

Dentro de tal concepto fundamental, desde hace ya muchísimo tiempo en esta jurisdicción se ha resuelto que la sucesión hereditaria, aunque se denomine comúnmente como "*sucesión López*" etc., no existe como persona jurídica, por lo que en tal situación siempre se ha de atender a la persona o al conjunto de personas que la compone, pues sólo éste o éstos son los que cuentan con la capacidad de actuar. *Pino Development Corp. v. Registrador,* 133 DPR 373, 388 (1993). Por ello, es necesario que la sucesión "... *se particularice e individualice expresando los nombres de los miembros que la componen.*" *Fuentes v. Tribunal de Distrito,* 73 DPR 959, 987 (1952).

"*Son los miembros de la sucesión y no ésta los que deben aparecer como demandantes o demandados*". *Sucn. Belaval v. Acosta,* 64 DPR 109, 111 (1944).

Tampoco se alega en autos que Comtec sea una compañía mercantil, civil, etc., que a su vez cuente con personalidad jurídica. Art. 95 Código de Comercio, 10 LPRA 1341, Art. 1556, 1560 Cc. 31 LPRA 4311-4315.

Como excepción, con propósito limitado y siempre salvaguardando el debido proceso de ley, el ordenamiento procesal ha permitido que judicialmente una persona civil o jurídica, debidamente así identificada, accione contra otra persona, civil o jurídica utilizando un nombre ficticio, sólo cuando se trate de **un demandado de identidad desconocida** (y por tanto innominado) siempre y cuando se trate de una acción contra una cosa (*in rem*), Regla 4.6 de Procedimiento Civil, 32 LPRA Ap. III, R. 4.6; o cuando se trate de **un demandado de identidad conocida, pero cuyo nombre correcto en ese momento verdaderamente se desconoce.**

En tal último caso, la Regla 15.4 de Procedimiento Civil, 32 LPRA Ap. III, R. 15.4, así lo autoriza, sólo para propósitos de las alegaciones e interruptivos de la prescripción. No obstante, en algún momento **antes del juicio** será necesario determinar el nombre correcto de tal "*demandado de identidad conocida y nombre desconocido, para que el demandante proceda a enmendar la demanda con el propósito de sustituir el nombre ficticio por el correcto, y proceda a su emplazamiento para que* "... *se le de una oportunidad de ser oído y defenderse*" *Rodríguez v. Nasrallah,* 118 DPR 93, 92 (1986), **puesto que no se puede dictar sentencia en una acción personal (*in personam*) contra un desconocido. Sería igual que dictar sentencia en forma innominada. Si no se identifica en la sentencia, en forma definitiva y específica, quién es la persona obligada, realmente no podemos concebir tal dictamen como obligación a cumplir. Tal "*sentencia*" carece de objeto. En caso como el presente, la sentencia ha de ser a título personal (civil o jurídico), para ser válida, tanto en cuanto al demandante como al demandado.** *Núñez González v. Jiménez Miranda,* 122 DPR 134, 139-144 (1988).

Aun en situaciones muy especiales, en que el tribunal permita proteger un legítimo interés de intimidad y para ello expresamente autorice utilizar un seudónimo en el epígrafe, en el cuerpo de la demanda o de la reconvención, lo único que ocurre es que no se publica el nombre de la parte. En tales casos, el nombre correcto de la parte protegida se mantiene sellada en el expediente, pero siempre es de pleno conocimiento para el Tribunal y las demás partes realmente interesadas en el litigio. Véase *J.A.D.M. v. Centro Comercial Plaza Carolina,* 132 DPR 787 (1993); *Elba A.B. v. U.P.R.,* 125 DPR 294 (1990).

Por lo tanto, "*parte en un litigio*" y "*jurisdicción sobre la persona*" son conceptos entrelazados, procesal y sustantivamente.

*Procesalmente, el concepto* **parte está inexorablemente atado al de jurisdicción sobre la persona (el demandante – actor o promovente original – que se somete voluntariamente al presentar la acción y el demandado que es notificado mediante emplazamiento).** *Su citación o emplazamiento representa el paso inaugural de debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial. Reyes Reyes v. Oriental Fed. Savs. Bank, 133 DPR 15 (1993); Pagán v. Rivera Burgos, 113 DPR 750, 754, (1983). Por tal razón,*

*consistentemente hemos resuelto que la falta de diligenciamiento del emplazamiento (personal o por edictos) priva al tribunal de jurisdicción sobre la persona e invalida cualquier sentencia en su contra. No es hasta que se diligencia el emplazamiento y se adquiere jurisdicción, que la persona puede ser considerada propiamente parte, aunque haya sido nombrada en el epígrafe de la demanda; hasta ese momento sólo es parte nominal.* Acosta v. ABC, Inc., 142 DPR 927, 931 (1997) (nota al calce suprimida. Énfasis suplido).

Para poder ser parte **demandada** en causa *in personam,* primero se tiene que ser parte **nominal** (con nombre correcto o ficticio) en la demanda, y luego del correspondiente emplazamiento o citación (mediante el cual se confiere jurisdicción al Tribunal) se pueda considerar parte en el pleito. Luego, durante el proceso procede sustituir el nombre ficticio por el correcto, antes de dictar una sentencia que pueda advenir válida y ejecutable.

En el reciente caso de *Medina v. Medina*, 161 DPR ____ (2004) **2000 J.T.S. 79**, se dijo:

*"(1) No es hasta que se diligencia el emplazamiento y se adquiere jurisdicción, que la persona puede ser considerada propiamente parte, **aunque haya sido nombrada en el epígrafe de la demanda; hasta ese momento sólo es parte nominal.***

*(2) y en la nota al calce núm. 12, se expresó: Sobre este particular, el importante concepto de "parte" ha sido definido en la jurisdicción norteamericana de la siguiente forma: "[a] **person who is named as a party to an action** and subjected to the jurisdiction of the court is a party to the action". Véase: Restatement (Second) of Judgment, sec. 34 (1982). Véase además: (citas omitidas. Énfasis suplido)."*

Queda claro en autos que *"Comtec Communication"* no es persona civil y también carece de personalidad jurídica, además de que no es parte demandada en la causa DPE2002-0112 bajo el limitado supuesto de persona con identidad conocida y nombre entonces desconocido (Regla 15.4 de Procedimiento Civil, *supra*) o demandado de identidad desconocida en pleito *"in rem"* (Regla 4.6 de Procedimiento Civil, *supra*).

Para que el TPI pudiera contar con jurisdicción ante los hechos que esta causa informa (acción *in personam*), era indispensable que la demandante del epígrafe accionara contra *"**Alberto Monzón, Henry Barreda y José Barreda, haciendo negocios como** (o "HNC"/ "DBA") Comtec Communication*, o por lo menos contra *"mengano y sutano"*, (si desconocía el nombre correcto de estos señores) como personas de identidad conocida y nombre desconocido, haciendo negocios como (o *"HNC"* / *"DBA"*) Comtec Communication. Tal parte demandada podía constar del epígrafe (como lo requiere la Regla 8.1 de Procedimiento Civil, 32 LPRA III, R. 8.1) o del cuerpo de la demanda.

Procesalmente, al sólo *"demandar"* a un impersonal *"Comtec Communication"* equivale a no demandar a parte alguna y el *"emplazamiento"* por conducto de persona civil no puede subsanar tal defecto. A tal efecto, en la Sentencia y Opinión concurrente en *Scorpio Recycling, Inc. v. Mejías*, 136 DPR 326, 328-329 (1994), se ha expuesto, por lo menos persuasivamente, que:

*"**La Corporación Adolfo Krans & Asociados, haciendo negocios como Puerto Rico Krans Agency, no ha sido demandada; por lo tanto, el emplazamiento hecho a través del señor Sánchez no pudo tener el efecto de convertirla en demandada y traerla válidamente ante el tribunal. No procedía la anotación de rebeldía.***

Como se sabe, el emplazamiento es el paso inagural del debido trámite y proceso de ley. Sólo así se autoriza el ejercicio de la jurisdicción ante el tribunal, para entonces poder adjudicar los derechos de las partes, *León v. Rest. El Tropical*, 154 DPR ____ (2001), **2001 J.T.S. 84**; *Quiñones Román v. Cía. ABC*, 152 DPR 367, 374 (2000). *Reyes v. Oriental Fed. Savs. Bank*, 133 DPR 15 (1993).

Antes de que un tribunal pueda adquirir jurisdicción *in personam* sobre una parte, se exige que el demandado sea notificado adecuadamente de la demanda, utilizando el procedimiento establecido en el ordenamiento jurídico. *Riego Zuniga v. Líneas Aereas LACSA,* 139 DPR 509 (1995), que no es otro que el emplazamiento. Se trata de un imperativo del debido proceso de ley, por lo que también requiere cumplimiento estricto. *Quiñones Román v. Cía ABC, supra,* pág. 374.

Ahora bien, demandada sólo *"Comtec Comunication"* en el expediente DPE2002-0112, (que no puede ser parte en una causa judicial por no contar con personalidad civil o jurídica) aunque se emplace a una persona civil que junto con otros opere bajo tal *nombre comercial,* no puede validamente anotarse la rebeldía ni dictarse así *"sentencia".* Por tanto, el dictamen del 12 de septiembre de 2002 resulta inoficioso y espúreo, puesto que realmente nunca ha existido en autos parte demandada, en la causa DPE2002-0112, antes del dictamen de la sentencia, como lo requiere el debido trámite. *Rodríguez v. Nasrallah, supra; Nuñez González v. Jiménez Miranda, supra.*

Se trata de un requisito procesal como sustantivo, que requiere que en toda causa judicial quede bien claro, de su faz y sin necesidad a lucubrar, quién es parte demandante y parte **demandada**. Para luego también conocer a quién favorece o afecta una sentencia.

Faltando en el proceso la parte demandada con personalidad jurídica o civil respecto al cual el Tribunal de Primera Instancia pueda adquirir jurisdicción, como lo sería si se hubiera demandado correctamente a: **Alberto Monzón, Henry Barreda, José Barreda haciendo negocios como Comtec Communications,** personas civiles sobre las que no podemos aquí concluir que la demandante desconocía sus nombres, la *"sentencia"* obtenida en la causa DPE2002-0112 ante el TPI es realmente inexistente e inoperante. **Comtec Communication** *per-sé* (al igual que *"Puerto Rico Krans Agency",* Scorpio Recycling, Inc. v. Mejías, supra, ambas como un *"HNC"* o *"DBA",* entendemos que no pueden ser parte demandada a menos que en conjunto se demande a las personas civiles (**Monzón, Barreda y Barreda**) o jurídicas (**Adolfo Krans & Asociados**) que hace negocios bajo tal nombre comercial y así también se le emplace adecuadamente.

El emplazamiento hecho en la persona de Monzón tampoco le convierte a él en demandado en el caso DPE-2002-0112, por lo que tampoco procede la anotación de rebeldía y sentencia en su contra.

*"Nuestro sistema procesal se funda en el reclamante diligente. Así lo hemos requerido, específicamente, del demandante que pretende utilizar la figura del demandado de nombre desconocido. Núñez González v. Jiménez Miranda, 122 DPR 134 (1988); Fuentes v. Tribl. de Distrito, 73 DPR 959, 985-986 (1952); Martínez Díaz v. ELA, 132 DPR 200, 213, nota al calce núm. 3, Op. Concurrente."* (Énfasis suplido).

La actual Regla 15.3 de Procedimiento Civil 32 LPRA Ap. III, R. 15.3, **[1]** requiere ser interpretada conforme atendido en la sentencia en *Scorpio Recyclin, Inc. v. Mejías,* págs. 328-329, en el sentido de que la frase *"éstas podrán ser demandadas" bajo el referido nombre común"* (énfasis suplido) significa que el *"nombre común"* (sigla, *"HNC"* o *"DBA"* etc.) al igual que la(s) persona(s) civil(es) o jurídica(s) que lo utilicen para hacer negocio, **también consten identificadas claramente en el pliego de la demanda como parte demandada**, conforme lo requiere la Regla 8.1 de Procedimiento Civil, *supra.* Al igual que la parte demandante, la parte demandada debe surgir claramente del epígrafe o cuerpo del pliego de la reclamación.

La hermenéutica invita a la interpretación armoniosa entre preceptos procesales y substantivos con propósito de alcanzar resultados igualmente integrados. *Pueblo v. Zayas Rodríguez,* 147 DPR 530 (1999). Como se sabe:

*"Las Reglas de Procedimiento Civil se inspiran armoniosamente en tres valores fundamentales de justicia, rapidez y economía, enmarcados en la norma de buena fe que debe permear la tramitación de toda causa de*

*acción. Para que ello se logre se requiere un enfoque integral, pragmático y creativo de nuestro ordenamiento procesal y sustantivo que con voluntad, sinceridad y acción, le de vida a dichos valores y los convierta en vivencias y realidades cotidianas, atendiendo así las altas expectativas de nuestro contorno social. Neptuno Packing Corp. v. Wackenhut Corp., 120 DPR 283, 288 (1988). "* Citado con aprobación en *Quiñones Román v. Cía. ABC, supra*, pág. 374.

En la causa DPE2002-0112 se violentó el debido trámite y se produjo un dictamen judicial incapaz de ser ejecutado de su faz. Peor aún, tal *"sentencia"* inoficiosa no podía posteriormente servir de fundamento válido en un proceso sumario al amparo de la Regla 51.7 de Procedimiento Civil, *supra*, para ser ejecutada sobre terceras personas.

Como hemos aquí visto, años después del dictamen de la *"sentencia"* contra Comtec, accesando al mecanismo sumario de la Regla 51.7 de Procedimiento Civil, 32 LPRA Ap. III, R. 51.7, (a nuestro juicio, mal) se utilizó una sentencia **nula** e **inexistente** para extender tal dictamen a tres personas civiles.

Por idéntica razón, de la inexistencia de dictamen válido en la causa DPE02-0112, tal *"sentencia"* luego **no** puede ser utilizada como eficaz *"... contra uno o más entre varios deudores solidariamente responsables..."* al amparo de la Regla 51.7 *supra*, para lograr que persona civil o jurídica quede obligada por sus términos. **Ello responde al principio hermenéutico de que lo inexistente no genera derecho alguno, mucho menos de carácter solidario**.

Entiendo que la *"sentencia enmendada"* y dictada en la causa DPE2002-0112 el 5 de abril del 2005, al amparo de la Regla 51.7 de Procedimiento Civil, *supra*, es también nula e ineficaz, por utilizar como base una *"sentencia"* del 12 de septiembre del 2002, dictada sin jurisdicción, que desde su inicio era nula o espúrea. Tal *"sentencia enmendada"* continúa careciendo de parte demandada y por tanto, de idéntico defecto, no enmendable.

Por lo expuesto, y sin entrar aquí a considerar los aspectos sustantivos en que fundamenta su reclamación la Sra. Berastain, no puedo concurrir con el dictamen de la compañera y compañero de mayoría. Entiendo que lo resuelto en *Scorpio Recycling, Inc. v. Mejías, supra*, sirve para aclarar el aspecto aquí en controversia.

**GUILLERMO ARBONA LAGO**
**Juez de Apelaciones**

**ESCOLIO OPINIÓN DISIDENTE DEL JUEZ ARBONA LAGO - 2006 DTA 11**

**1.** La Regla 15.3 no cuenta con contraparte en el ordenamiento procesal federal. Su texto actual data del 1979, al sustituir el anterior, que disponía:

*"Una mujer casada necesita el concurso de un marido, excepto:*

*(a) Cuando el pleito concierna a sus bienes propios o a su derecho a hogar seguro;*

*(b) Cuando el pleito sea entre ella y su marido;*

*(c) Cuando esté viviendo separada de su marido por causa de abandono de cualquiera de los cónyuges;*

*(d) Cuando el marido y la mujer fueren demandados conjuntamente en el cual caso podrá ella defender su propio derecho, y si el marido dejare de defenderse podrá defender también el derecho de él;*

*(e) Cuando por ley se disponga lo contrario." Sáez v. Mun. de Ponce*, 84 DPR 535 (1962) nota al calce 3.