Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF FINANCE OF AMERICA STRUCTURED SECURITIES ACQUISITION TRUST 2019 HB1<br><br>Recurrida<br><br>V.<br><br>SUCESIÓN DE GREGORIO VELÁZQUEZ CASTRO T/C/C GREGORIO VELÁZQUEZ Y OTROS<br><br>Peticionario | KLCE202300816 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV01687 (803 CIVIL)<br><br>Sobre: NULIDAD DE SENTENCIA |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de septiembre de 2023.

El 20 de julio de 2023, la parte peticionaria, Sucesión de Gregorio Velázquez Castro, compuesta por sus miembros, Deborah Velázquez Oyola; Jonathan Velázquez Oyola; Rebeca Velázquez Oyola; Raquel Velázquez Oyola; Abram Velázquez Oyola, Eunice Velázquez Oyola y David Velázquez Oyola, compareció ante nos y solicitó nuestra intervención para que dejemos sin efecto la *Resolución*, emitida y notificada, el 15 de mayo de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En la misma, el foro recurrido declaró *Ha Lugar* la *Oposición a Moción de Relevo de Sentencia*, presentada por la parte recurrida, Wilmington Savings Fund Society, FBS, as Trustee of Finance of America Structured Securities Acquisition Trust 2019-HB1 (Wilmington o parte recurrida). Los hechos pertinentes a esta controversia son los siguientes.

Número Identificador

SEN2023_____

**I**

El 8 de marzo de 2022, la parte recurrida presentó *Demanda de Nulidad y Relevo de Sentencia.* En su escrito, instó dos causas de acción. Ambas se dirigieron a solicitar que se relevara a las partes de los efectos de la sentencia emitida el 1 de mayo de 2020 y notificada el 7 de mayo de 2020, en el caso *SJ2018CV4341* del Tribunal de Primera Instancia, Sala Superior de San Juan, el cual versaba sobre un pleito de ejecución de hipoteca, y en el que comparecieron como partes los litigantes de epígrafe. En la referida determinación, el tribunal sentenciador declaró que la parte peticionaria debía satisfacer, en favor de la parte recurrida, la suma de $60,705.52, más los interese pactados al 5.060%; y una suma estipulada del 10% en concepto de gastos, costas y honorarios de abogado. A esos efectos, ordenó la venta en púbica subasta del inmueble, por ser la acción una de naturaleza *in rem.* No obstante, la parte recurrida instó la presente primera causa de acción para impugnar la validez de la referida sentencia por motivos de nulidad, toda vez que, alegadamente, la sentencia fue dictada en contra de una moratoria federal, la cual, a esa fecha, impedía que se dictase sentencia en ejecución de hipoteca.

En lo que respecta a la segunda causa de acción, la parte recurrida fundamentó su petición de relevo de sentencia, bajo el argumento de que existió fraude en el curso del pleito anterior. Ello, debido a que, alegadamente, la parte peticionaria tenía conocimiento sobre un error en la suma esbozada en la demanda del caso previo. Particularmente, adujo que la parte peticionaria había sido informada, mediante previas comunicaciones, sobre que la cantidad adeudada ascendía a $681,671.19. Omitió informar que permitió que se dictara Sentencia en su contra por una suma menor, específicamente $60,705.52. Siendo así, arguyó que la suma principal verdaderamente adeudada era de $681,671.19. A tenor con lo anterior, alegó que la referida cifra era una vencida y pagadera, conforme surge de la

Escritura de Hipoteca, dado que el inmueble objeto de ejecución de hipoteca, no era la residencia principal de ninguno de los sucesores del señor Gregorio Velázquez Castro. En cuanto al trámite procesal, cabe resaltar que la sentencia cuya nulidad se pretende fue notificada a las partes el 7 de mayo de 2020. No es hasta que la Sucesión, aquí parte peticionaria, revela su interés de satisfacer la sentencia mediante el pago de los $60,705.52, el 17 de agosto de 2021, más de un año después de haber advenido final y firme, que Willmington sostuvo haberse percatado del "alegado error" en la cuantía. Entonces, presentó *Moción en Solicitud de Relevo de Sentencia y Solicitud de Demanda Enmendada*, en síntesis, suplicando el relevo de la misma. El foro primario denegó esta por haberse presentado tardíamente y además concluyó que, aun si hubiese sido presentada oportunamente, los argumentos presentados como base de la misma, no justificaban el relevo.[1] Ante ello, Wilmington instó una acción independiente y mediante la misma radicó la presente alegación en solicitud de un remedio. En virtud de lo esbozado, solicitó al foro de origen que declarara nula la sentencia notificada el 7 de mayo de 2020; que determinara la existencia de fraude al tribunal y, en consecuencia, revelara a las partes de la referida sentencia.[2]

Así las cosas, el 15 de marzo de 2022, la secretaría del tribunal recurrido, expidió los emplazamientos de la parte peticionaria. Acto seguido, el 27 de abril de 2022, la parte recurrida presentó escrito intitulado *Moción Urgente Solicitando Orden para Emplazar por Edicto al Amparo de la Regla 4.6 de Procedimiento Civil*. En lo pertinente, la referida parte de una forma sucinta expuso las gestiones que llevó a cabo para el diligenciamiento de los emplazamientos. En apoyo a sus argumentos, anejó una declaración jurada, con fecha del 25 de abril de 2022, suscrita por el emplazador Frank Vega Pérez. Surge de los

---

[1] Véase, pág. 72 del apéndice del recurso.
[2] Véase, pág. 1 -11 del apéndice del recurso.

dichos del emplazador, que el 23 de marzo de 2022, visitó la dirección donde se ubicaba el inmueble objeto de litigio, Urbanización Milaville García #32, en el pueblo de San Juan y encontró la propiedad abandonada.

Ese mismo día, se presenció a otra dirección, Condominio Treasure Point, Apt. 323 en la Calle Oliver A-83, Vega Alta, la cual aparentemente era conocida como posible ubicación de la parte peticionaria. Se detalla que, en la misma, no se encontró ningún registro de los nombres y apellidos de la referida parte. En el escrito, se esboza en forma general, que se hizo una búsqueda en las plataformas digitales. Además, se menciona el intentó de localización, mediante otras dos (2) direcciones, de solo dos (2) de los herederos del causante Gregorio Velázquez Castro; Rebeca Velázquez Oyola y Abraham Velázquez Oyola. Finalmente, se expresa que se visitó la residencia de un familiar de la parte peticionara, el cual le informó, que "todos los miembros de la sucesión de Gregorio Velázquez" residían en el extranjero. Así pues, la parte recurrida solicitó al Tribunal de Primera Instancia que autorizara el emplazamiento por edicto de la parte peticionaria.[3] El 28 de abril de 2022, el tribunal de origen notificó una *Orden* a esos efectos.

El 26 de mayo de 2022, la parte recurrida presentó *Moción Informativa sobre Emplazamiento por Edicto*. En esencia, le informó al tribunal recurrido que envió a la parte peticionaria copia de la demanda y emplazamiento a sus últimas dos (2) direcciones conocidas. Posteriormente, el 12 de julio de 2022, la parte recurrida presentó *Moción Solicitando Anotación de Rebeldía*. En síntesis, expuso que emplazó a la parte peticionaria mediante edicto y ello fue conforme a derecho. Siendo así, sostuvo que la parte peticionaria no presentó alegación responsiva dentro del término dispuesto por las Reglas de Procedimiento Civil. Por tanto, según alegó, solicitó al foro

---

[3] Véase, págs. 137-139 del apéndice del recurso.

de origen que anotara la Rebeldía de la parte peticionaria y diera por admitidos todos los hechos bien alegados en la demanda.[4]

En respuesta al escrito anterior, el 8 de agosto de 2022, el Tribunal de Primera Instancia emitió y notificó el 9 de agosto de 2022, una *Sentencia en Rebeldía*. En su determinación, el foro recurrido entendió que la parte peticionaria fue debidamente emplazada. A su vez, declaró *Ha Lugar* la demanda de autos, por lo cual dictaminó que la sentencia emitida el 1 de mayo de 2020 y notificada el 7 de mayo de 2020, era nula, toda vez que, la moratoria federal alegada por la parte recurrida privaba al Tribunal de jurisdicción. De igual modo, determinó que existió fraude en el pleito anterior, dado que, la parte peticionaria indujo al Tribunal a error, ya que conocía la cantidad principal que se debía realmente. Ante ello, el Tribunal de Primera Instancia relevó a las partes de los efectos de la referida sentencia.[5]

Posteriormente, el 6 de febrero de 2023, la parte peticionaria presentó escrito intitulado *Urgente Moción Solicitando Nulidad y/o Relevo de Sentencia por Falta de Jurisdicción sobre la persona*. En esencia, alegó que no se le emplazó conforme a derecho, dado que existieron múltiples insuficiencias en el diligenciamiento del emplazamiento. Para sustentar su posición, sostuvo que la Declaración Jurada presentada por la parte recurrida era estereotipada e insuficiente. Específicamente adujo, que la referida Declaración Jurada carece de establecer las gestiones particulares realizadas para lograr emplazar a cada uno de los herederos del causante Gregorio Velázquez Castro. Asimismo, arguyo que, tampoco se envió copia de demanda y emplazamiento a una dirección razonablemente calculada, toda vez que el referido envío se realizó a dos direcciones irrazonables. Una de ellas, relacionada a una propiedad que se conocía que estaba abandonada y la otra, carente de

---

[4] Véase, pág. 147-157 del apéndice del recurso.
[5] Véase, págs. 176-191 del apéndice del recurso.

evidencia de residencia de alguno de los herederos. De igual modo, alegó que dicho envío fue dirigido a una persona jurídica inexistente, es decir, la Sucesión de Gregorio Velázquez Castro. Además, añadió que la búsqueda de internet realizada por la parte recurrida no incluyó suficiente información. Ante ello, solicitó al foro recurrido la nulidad de la sentencia dictada por falta de jurisdicción sobre la persona.

Así las cosas, el 27 de febrero de 2023, la parte recurrida, presentó *Oposición a Moción de Relevo de Sentencia*. En síntesis, expuso que realizó esfuerzos razonables para lograr localizar a la parte peticionaria. Particularmente, y contrario a lo aducido por la parte peticionaria, arguyó que se expresaron hechos específicos en la Declaración Jurada. De igual modo, adujo que se incluyeron fechas, direcciones, números de teléfonos y búsqueda en las redes sociales. A su vez, alegó que el Tribunal de Primera Instancia, en su discreción, determinó la suficiencia de circunstancias para emplazar por edicto. De otra parte, agregó que la dirección donde ubica el bien inmueble objeto de ejecución de hipoteca fue una proporcionada y aceptada por la propia parte peticionaria. Finalmente, solicitó al foro de origen que declara *No Ha Lugar* la moción presentada por la parte peticionaria.

Trabada la controversia, el 15 de mayo de 2023, el Tribunal de Primera Instancia emitió y notificó una *Resolución*. En la determinación, el tribunal recurrido declaró *Ha Lugar* la *Oposición a Moción de Relevo de Sentencia,* bajo los fundamentos expuestos en el escrito de la parte recurrida. En consecuencia, determinó *No Ha Lugar* la solicitud de relevo de sentencia presentada por la parte peticionaria.

Inconforme, el 30 de mayo de 2023, la parte peticionaria presentó escrito en reconsideración. En esencia, alegó nulidad de la sentencia. Ello, por ausencia de notificación, tanto de la sentencia como del emplazamiento por edicto a todos los herederos y por falta

de parte indispensable. El 7 de junio de 2023, la parte recurrida se opuso al anterior escrito, bajo el fundamento de que las gestiones del emplazamiento fueron evaluadas dentro de la sana discreción del foro recurrido. El 17 de junio de 2023, el Tribunal de Primera Instancia atendió ambos escritos. Así pues, el 20 de junio de 2023, notificó una *Resolución* en la que declaró *No Ha Lugar* la moción de reconsideración presentada por la parte peticionaria.

Aun inconforme, el 20 de julio de 2023, la parte peticionaria presentó el recurso de *certiorari* que nos ocupa. En el mismo, planteó los siguientes señalamientos de error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO RELEVAR LA SENTENCIA POR CAUSA DE NULIDAD. NI EL EMPLAZAMIENTO NI LA DEMANDA NOTIFICADA MEDIANTE EDICTOS NI LA SENTENCIA FUE ENVIADA A NINGUNO DE LOS 8 CODEMANDADOS.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO RELEVAR LA SENTENCIA POR CAUSA DE NULIDAD. AL NO ENVIARSE NOTIFICACIONES A UNA DIRECCIÓN RAZONABLEMENTE CALCULADA.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO RELEVAR LA SENTENCIA CUANDO EXISTE CLARA AUSENCIA DE PARTE INDISPENSABLE.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO RELEVAR LA SENTENCIA POR CAUSA DE NULIDAD. LA DECLARACIÓN JURADA CON LA CUAL SE AUTORIZÓ EL EMPLAZAMIENTO POR EDICTO NO ACREDITÓ GESTIONES PARTICULARIZADAS Y SUFICIENTES PARA EMPLAZAR A LOS 8 CODEMANDADOS.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nuestra consideración.

## II

### A. Recurso de Certiorari

El recurso de *certiorari* está regulado por nuestro ordenamiento procesal civil. Así pues, la Ley de la Judicatura dispone que el Tribunal de Apelaciones revisará como cuestión de derecho sentencias finales del Tribunal de Primera Instancia, así como las decisiones finales de los organismos administrativos y de forma discrecional

cualquier otra resolución u orden dictada por el Tribunal de Primera Instancia. 4 LPRA sec. 24(u).

En lo relacionado al auto de *certiorari,* es sabido, que se define como un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las decisiones de un tribunal inferior. 32 LPRA sec. 3491; *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al v. BBVAPR,* 185 DPR 307, 337 (2012). A su vez, posibilita atender determinaciones, mayormente interlocutorias, que no son finales del foro de origen. *Yumac Home v. Empresas Massó,* 194 DPR 96, 106 (2015). En esencia, este mecanismo procesal permite al foro revisor corregir algún error cometido por el tribunal de menor jerarquía. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). El referido recurso es uno de carácter discrecional. Esta discreción, ha sido definida jurisprudencialmente "como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera.*" Negrón v. Srio de Justicia*, 154 DPR 79, 91 (2001). Al utilizar un sano juicio, el foro revisor evita abstraerse del resto del derecho, y en consecuencia se libera de cometer un abuso de discreción. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 711 (2019*); IG Builders et al. v. BBVAPR, supra; Negrón v. Srio de Justicia,* supra.

Cabe señalar, que el auto de *certiorari* está delimitado por la Regla 40 de este Tribunal. Mediante la misma, se establecen una serie de criterios que ayudan a dirigir el juicio de este Foro en la decisión de expedir o denegar el auto solicitado. Dichos criterios reglamentarios son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

El delimitar la revisión judicial a los parámetros de la Regla 40, *supra,* contribuye a dilatar innecesariamente los procedimientos. Particularmente, se evita revisar controversias que pudieran esperar a ser esbozadas en un recurso apelativo. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486 (2019). En cuanto a la facultad discrecional de denegar o expedir el auto solicitado, el tribunal, de forma comedida, puede inclinarse a expedir el recurso y adjudicarlo en sus méritos. Al tomar la referida decisión, el foro revisor asume jurisdicción sobre el asunto expuesto ante su consideración. Así pues, revisa e interviene con las decisiones del foro recurrido, para auscultar que estas sean justas y conforme a la normativa aplicable. *Negrón v. Srio. de Justicia*, supra.

Ahora bien, ha de quedar claro que el *certiorari* puede ser expedido para revisar errores de los foros primarios sin importar la naturaleza de los errores señalados, sean estos de naturaleza procesal o sustantiva. *Pérez v. Tribunal de Distrito y Puig, Interventor*, 69 DPR 4, 19 (1948).

### B. Relevo de Sentencia

A través de la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, se regula el relevo de sentencia. La precitada regla esboza lo siguiente:

Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:

(a) error, inadvertencia, sorpresa o negligencia excusable;
(b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
(c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
(**d) nulidad de la sentencia;**
(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o
(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia. (Énfasis suplido).

Para que proceda este mecanismo post-sentencia debe estar presente alguno de los fundamentos previamente enumerados. *SLG Rivera-Pérez v. SLG Díaz-Doe et al.,* 207 DPR 636, 657 (2021); *Náter v. Ramos,* 162 DPR 616, 624 (2004). Al juzgador determinar la existencia de algún fundamento aplicable al asunto en consideración, conlleva, dentro de su buen juicio, establecer un balance entre los dos (2) intereses en conflicto: de un lado, la culminación de un pleito para garantizar su finalidad, y de otro lado, que las decisiones sean conforme a los principios de la justicia. *Íd.* El análisis del tribunal debe ser racional y justiciero, y requiere considerar la totalidad del expediente del caso para evaluar si bajo las circunstancias particulares del asunto existe razón para dejar sin efecto el dictamen notificado. *Dávila v. Hosp. San Miguel, Inc.*, 117 DPR 807, 817 (1986). Para apoyar su quehacer jurídico, el Juez primario, debe estar alerta ante la existencia de alguno de los siguientes elementos: cualquier defensa válida que pueda levantar la parte que se opone al relevo de sentencia; el tiempo que transcurrió entre la sentencia y la solicitud del relevo; el perjuicio que sufriría la parte opositora si se concede la solicitud del peticionario; y el perjuicio que sufriría la parte

promovente de dejarle desprovista del remedio solicitado. *Pardo v. Sucn. Stella*, 145 DPR 816, 825 (1998). De otra parte, como regla general, el mecanismo de relevo de sentencia debe ser interpretado liberalmente. En caso de duda, la misma debe ser resuelta en favor de la parte que solicita el remedio post-sentencia. *Náter v. Ramos*, supra, pág. 624.

Empero, el relevar a una parte de los efectos de la sentencia es una facultad discrecional del foro sentenciador, salvo en los casos de nulidad o cumplimiento de sentencia. *Náter v. Ramos*, supra, pág. 625. En cuanto a la existencia de nulidad, una sentencia es nula, cuando el tribunal carece de jurisdicción para dictarla o de alguna forma infringe el debido proceso de ley. *SLG Rivera-Pérez Torres v. SLG Díaz-Doe et al.,* supra; *Rivera v. Jaume,* 157 DPR 562, 574 (2002); *Figueroa v. Banco de San Juan,* 108 DPR 680, 689 (1979). Al no nacer lo nulo a la vida jurídica, la parte que meritoriamente ha levantado la defensa de nulidad debe prevalecer en su solicitud, toda vez que, el tribunal carece de discreción en la concesión del remedio solicitado. *SLG Rivera-Pérez Torres v. SLG Díaz-Doe et al.,* supra. De otra parte y, en síntesis, independientemente del fundamento válido y justificado que invoque el promovente, no se debe omitir que el referido remedio de reapertura tiene su génesis en la propia razón del foro judicial, el hacer justicia. *Piazza v. Isla del Río, Inc.*, 158 DPR 440, 448 (2003).

### C. Emplazamiento

El emplazamiento es el mecanismo procesal por el cual se adquiere jurisdicción sobre la persona del demandado. Su propósito, recae en notificar a la parte demandada sobre la existencia de una causa de acción en su contra. *Bernier González v. Rodríguez Becerra,* 200 DPR 637, 644 (2018). Al ser el emplazamiento un mecanismo fundamental del debido proceso de ley, su cumplimiento va más allá de una mera formalidad. *Martajeva v. Ferre Morris* y *otros*, 210 DPR 612, 620 (2022). Es por ello, que un demandado se considera

propiamente parte al emplazarse conforme a derecho, antes del diligenciamiento es solo una parte nominal. *Torres Zayas v. Montano Gómez et als.,* 199 DPR 458, 467 (2017). Una vez emplazada, la parte demandada, podrá ejercer su derecho a comparecer al procedimiento entablado, ser oído, y presentar prueba a su favor. *Martajeva v. Ferre Morris* y *otros*, supra.

En nuestro ordenamiento procesal civil existen dos (2) maneras para diligenciar un emplazamiento. Las dos formas son: el emplazamiento personal y el emplazamiento mediante edicto. *Sánchez Ruiz v. Higueras Pérez et al.*, 203 DPR 982, 987 (2020). La Regla 4.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 4.6, detalla el procedimiento requerido para emplazar por edicto. Así pues, esboza las siguientes instancias en las que se puede utilizar el referido mecanismo procesal: (a) cuando la persona a ser emplazada esté fuera de Puerto Rico; (b) el demandado se encuentra en Puerto Rico, pero no pudo ser localizado a pesar de las diligencias pertinentes; (c) la persona se oculte para no ser emplazada; o (d) se trate de una corporación extranjera sin agente residente. 32 LPRA Ap. V, R. 4.6.

Cabe señalar, que el emplazamiento por edicto es una vía excepcional, debido a que, el diligenciamiento personal es el método idóneo para adquirir jurisdicción sobre la persona del demandado. *Banco Popular v. S.L.G. Negrón*, 164 DPR 855, 865 (2005). A su vez, es preciso mencionar que los requisitos del emplazamiento por edicto se deben observar estrictamente. De lo contrario, se violentaría el debido proceso de ley en su vertiente procesal, y el tribunal no tendría jurisdicción sobre la persona del demandado, por lo cual, la sentencia que en su día se dicte sería nula. *Torres Zayas v. Montano Gómez,* supra, págs. 468-469; *Banco Popular v. S.L.G. Negrón,* supra, pág. 866. Por lo tanto, el método para emplazar que se utilice tiene que ofrecer, a la luz de los hechos del caso, una probabilidad razonable de notificar al demandado sobre la reclamación en su contra. *Banco*

*Popular v. S.L.G. Negrón*, supra, pág. 863; *Márquez v. Barreto*, 143 DPR 137, 143 (1997).

Previo a autorizarse un emplazamiento por edicto, la parte demandante debe hacer constar que ha efectuado gestiones en forma eficaz para intentar localizar a la parte demandada y emplazarlo personalmente. *Reyes v. Oriental Fed. Savs. Bank*, 133 DPR 15, 23 (1993); *Lanzó Llanos v. Banco de la Vivienda*, 133 DPR 507, 513 (1993). Así pues, al presentarse una moción a los efectos de solicitar el emplazamiento mediante edicto, el juzgador deberá cerciorarse de que se han realizado las referidas gestiones necesarias para localizar al demandado. *Global v. Salaam*, 164 DPR 474, 482 (2005). Estas gestiones deben llevarse a cabo mediante hechos específicos que demuestren diligencia. De este modo, el foro primario podrá determinar tal diligencia en consideración de los hechos particulares del caso. *Lanzó Llanos v. Banco de la Vivienda*, supra, págs. 513-515.

La parte promovente de la solicitud del emplazamiento por edicto deberá acompañar su petitorio con una Declaración Jurada. En la referida Declaración Jurada deberá constar una relación de hechos detallados, los cuales demuestren la debida diligencia ejercida y no mera conclusiones y generalidades, que no serían otra cosa que prueba de referencia. *Global v. Salaam*, supra; *Banco Popular v. S.L.G. Negrón*, supra, pág. 865; *Mundo v. Fúster*, 87 DPR 363, 371 (1963). Para que la Declaración Jurada sea suficiente se deben detallar las gestiones realizadas, con expresión de las personas con quienes se investigó y su dirección. De este modo, se evita la existencia de fraude. *Sánchez Ruiz v. Higueras Pérez et al.,* supra; *Global v. Salaam,* supra, págs. 483-484. Para una investigación efectiva, nuestra jurisprudencia ha establecido una serie de criterios que deberá considerar la parte demandante en su intento de localizar a la parte demandada. Las gestiones que se han ejemplificado reiteradamente incluyen, el inquirir a las autoridades de la comunidad, la policía, el

alcalde, el administrador de correos, puesto que, son las personas que se entienden que pueden conocer la residencia o el paradero de las personas que viven en la comunidad. *Sánchez Ruiz v. Higueras Pérez et al.*, supra, pág. 988; *Global v. Salaam,* supra, *Mundo v. Fuster*, supra, pág. 372. Sin embargo, de forma jurisprudencial, también se han entendido como una buena práctica las diligencias que estén acordes a los avances tecnológicos en las comunicaciones, los cambios culturales y la demografía de nuestro país. *Global v. Salaam*, supra, pág. 483; *Lanzó Llanos v. Banco de la Vivienda*, supra. Ante ello, la parte demandante deberá, en su gestión de emplazar, utilizar todos los recursos que tenga razonablemente accesibles, y agotar toda posibilidad razonable disponible para localizar al demandado. De modo que, el foro judicial no adquirirá jurisdicción, si la Declaración Jurada que se presenta es insuficiente. *Reyes v. Oriental Fed. Savs. Bank.*, supra, pág. 25.

Por otra parte, la Regla 4.6, *supra*, de igual forma regula las gestiones que debe seguir un demandante luego de autorizarse el emplazamiento mediante edicto. Siendo así, en la precitada regla, se dispone que el demandante deberá dentro de los diez (10) días siguientes a la publicación del edicto, dirigir a la parte demandada una copia del emplazamiento y la demanda presentada al lugar de su última dirección física o postal conocida. 32 LPRA Ap. V, R. 4.6. La mencionada notificación, se enviará a cada persona demandada, puesto que, el emplazamiento debe ser expedido a cada parte que se encuentre en el epígrafe del caso como demandada. *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 481 (2019). Al interpretar el concepto de "última dirección conocida", el foro judicial, acogió un criterio normativo federal para establecer que la notificación será efectiva si se envía a una dirección razonablemente calculada. Ello, a la luz de las circunstancias particulares del caso. *Rivera v. Jaume*, supra, pág. 577. De modo que, la notificación de la demanda y el

emplazamiento se envía a una dirección razonablemente calculada, si su destino de una forma razonable advierte a la parte demandada de la reclamación incoada en su contra. *Íd.*

### D. Parte Indispensable

El deber jurídico de acumular en los pleitos toda parte que sea indispensable se encuentra consagrado en la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1. Así pues, surge del ordenamiento procesal civil, la necesidad de incluir en el litigio a las personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia. Su acumulación, se enmarca en el hecho de que no se podría dictar algún decreto final en el caso, sin que, con ello, se menoscabe y afecte sustancialmente su interés. *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio de Puerto Rico y otros*, Res. 14 de marzo de 2023, 2023 TSPR 26. De este modo, se salvaguarda la garantía de que las determinaciones finales del foro judicial sean consistentes con la equidad, la conciencia limpia y se emita un remedio completo. *Íd.* Ahora bien, para determinar que una persona es válidamente una parte indispensable, los tribunales deben examinar si su interés es real e inmediato y no basado en especulaciones o eventos futuros. *Íd.* Ello, se realiza mediante un enfoque pragmático, conforme a las circunstancias de cada caso. *Íd.* Para lograr este referido análisis contextual, se deben considerar factores tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, el resultado y la formalidad. *RPR & BJJ, Ex Parte*, 207 DPR 389, 409 (2021).

Las consecuencias de no acumular una parte indispensable derivan de la violación constitucional al debido proceso de ley de la parte ausente. Específicamente, ante la ausencia de un litigante indispensable, el tribunal carece de jurisdicción para adjudicar la

controversia y, de emitirse algún dictamen, este sería nulo. *Rivera Marrero v. Santiago Martínez*, supra, pág. 479; *García Colón et al., v. Sucn. González*, 178 DPR 527, 550 (2010). Siendo así, la ausencia de parte indispensable constituye una defensa irrenunciable, que incluso, puede levantarse en cualquier etapa del proceso judicial, incluyendo la apelativa. *RPR & BJJ, Ex Parte*, supra, pág. 407; *López García v. López García*, 200 DPR 50, 65 (2018).

### E. Notificación de la Sentencia

En nuestro ordenamiento jurídico es indispensable que se emita una notificación adecuada de las resoluciones, órdenes y sentencias a todas las partes en litigio. *Caro v. Cardona*, 158 DPR 592, 605 (2003). Su omisión, podría conllevar demoras indebidas en el proceso judicial, incluso, afectar el derecho de una parte a cuestionar la determinación del foro primario. *Dávila Pollock et als. v. R.F. Mortgage*, 182 DPR 86, 94 (2011); *Caro v. Cardona*, supra. En cuanto a lo que respecta a las notificaciones de una sentencia en rebeldía, su gestión conlleva la publicación de un edicto en un periódico de circulación general. Además, es requisito que se le informe a la parte demandada la sentencia dictada y el término para apelar. *R&G Mortgage v. Arroyo Torres y otros,* 180 DPR 511, 520-521 (2010).

### III

En el recurso de *certiorari* presentado ante nos, la parte peticionaria planteó cuatro (4) señalamientos de error. En el primero de ellos, la parte peticionaria expresa que incidió el foro recurrido al no autorizar el relevo de sentencia por causa de nulidad, toda vez que, tanto el emplazamiento como la demanda y la sentencia dictada, no fueron debidamente notificados a los herederos de Gregorio Velázquez Castro. Veamos.

Como fue previamente expuesto, el emplazamiento es el mecanismo procesal por el cual la parte demandada adviene en conocimiento de la reclamación entablada en su contra. Por tanto, su

diligenciamiento no es parte de un procedimiento meramente automatizado, ya que está arraigado al debido proceso de ley, el cual se encuentra garantizado constitucionalmente. Así pues, en nuestro ordenamiento jurídico se deben llevar a cabo las diligencias necesarias para intentar localizar a la parte demandada. Además, es preciso resaltar que los requisitos del emplazamiento se deben observar estrictamente y que el emplazamiento mediante edicto es la excepción y no la normal general. Independientemente de lo anterior, el método utilizado para emplazar debe ofrecer una probabilidad razonable de notificar a la parte demandada de la reclamación incoada. Ello, no se efectuó en el presente caso. Cabe destacar, que los hechos de esta reclamación tenían a ocho (8) demandados. Cada demandado tiene una personalidad jurídica independiente, y por ello, cada uno debía ser notificado mediante gestiones individuales y efectivas. La parte recurrida debió auscultar, de forma particularizada, la dirección de cada demandado y no intentar notificarles como un todo. Por tanto, no establece una debida notificación el haber enviado copia de la demanda y el emplazamiento a solo dos (2) direcciones, las cuales, a la luz de los hechos, no reflejaban una probabilidad razonable de notificar a todos los demandados.

En primer lugar, la parte recurrida no tenía conocimiento de que los ocho (8) demandados tuvieran la misma residencia. En segundo lugar, la parte recurrida ya había tenido un litigio anterior contra la misma parte demandada, lo cual, le coloca en una posición de tener más recursos para conocer el paradero de los herederos o al menos le brinda medios adicionales para obtener más información sobre estos. En tercer lugar, la propia recurrida, según obra en el expediente de autos, menciona, para sustentar su alegación de que la deuda es vencida y pagadera, que la propiedad a la cual fue enviada una de las notificaciones no es la residencia principal de ninguno de

los ocho (8) demandados. En cuanto a la otra dirección que fue notificada la demandada y el emplazamiento, la parte recurrida, ya tenía el conocimiento, según la propia búsqueda que realizó en la etapa del diligenciamiento, de que no era la dirección de residencia de la parte peticionaria. Por tanto, ninguno de los demandados tenía una probabilidad razonable de ser notificados de la acción en su contra. De igual modo, una sentencia por edicto enviada a una única dirección abandonada y que no individualiza a cada uno de los ochos (8) demandados, no tiene la probabilidad razonable de apercibir a cada demandado de la sentencia dictada y de su derecho a solicitar remedios post-sentencia.

En su segundo señalamiento de error, la parte peticionaria aduce que las notificaciones del caso de autos no fueron enviadas a una dirección razonablemente calculada. Le asiste la razón. Según se esbozó previamente, en nuestro ordenamiento civil se dispone que luego de publicarse un emplazamiento por edicto, la parte recurrida tiene el deber jurídico de enviar copia de la demanda y emplazamiento a la última dirección conocida de la parte demandada. Es preciso señalar, que lo que se entiende por última dirección conocida no incluye cualquier dirección que obre en la memoria o recuerdo de la parte demandante, sino que debe ser una razonablemente calculada. Siendo así, las circunstancias del caso ante nos, desprenden claramente que la notificación no se realizó a una dirección razonablemente calculada. De los dichos de la parte recurrida, surge que la propiedad objeto de ejecución de hipoteca, no es la residencia de ninguna persona, ya que durante el diligenciamiento del emplazamiento pudo comprobar que estaba abandonada. De igual modo, durante su gestión para emplazar corroboró que la otra dirección en que envió notificaciones no es residencia de ninguno de los demandados. Asimismo, los hechos particulares de este caso detallan que son varios los demandados. Ante ello, las referidas

notificaciones se deben realizar para cada parte demandada, según el epígrafe del caso, y no se debe notificar a los demandados como si fueran uno solo. Por tanto, las notificaciones no fueron enviadas una dirección razonablemente calculada, toda vez que sus lugares de destino no podían notificar rozablemente a los ocho (8) demandados del pleito en su contra.

El tercer error levantado por la parte peticionaria se basa en que la sentencia se vició de nulidad al dictarse, dado que, hubo ausencia de parte indispensable mientras se ventilaba el proceso en el foro primario. Tal y como fue expuesto, una determinación no surte efecto jurídico si falta alguna persona que tenga un interés de tal naturaleza en la causa de acción, el cual impida que en su ausencia se dicte un remedio completo. En el caso ante nuestra consideración, el Tribunal de Primera Instancia relevó a las partes de los efectos de una sentencia previamente dictada. Ello, en ausencia de todos los ochos (8) demandados del caso de epígrafe. En la referida sentencia se declaró nula la determinación dictada en el proceso judicial anterior. Además, mediante la misma, se estableció que los (8) demandados habían inducido al tribunal a error en cuanto a la verdadera suma adeudada. Ante ello, el relevo de sentencia concedido a la parte recurrida afecta sustancialmente los derechos de la parte peticionaria, ya que esta no fue debidamente emplazada, por lo cual no pudo comparecer, ser oída y defenderse. Por tanto, la sentencia dicta en su ausencia es nula por violentar su debido proceso de ley.

De otro parte, se hace meritorio señalar que la parte recurrida solicitó que se le relevara de los efectos de la sentencia anterior, toda vez que, existía un error en la cuantía adeudada. Cantidad, que la propia parte recurrida había detallado en la demanda del pleito anterior y la cual se había allanado a recibir. Nuevamente advertimos que el foro primario en el pleito original, habiéndosele presentado la solicitud bajo la Regla 49.2, *supra,* denegó su petitorio. Aún

inconforme, la parte recurrida elevó su reclamo ante el Tribunal Apelativo y un panel hermano en el KLCE202101337 denegó la expedición del recurso. No obstante, Wilmington adujo que el foro apelativo había consignado en su resolución denegatoria que el único remedio disponible contra la Sentencia era una acción independiente por fraude o nulidad.[6] A tenor con ello, la parte recurrida había entablado un proceso exclusivamente *"in rem,"* y no una acción personal en cobro de dinero. Conforme lo anterior, surge del pagaré hipotecario, que existe una limitación de responsabilidad en la deuda hipotecaria. Esta limitación consiste en que el deudor hipotecario no tendrá ninguna responsabilidad personal por el pago de la deuda. En consecuencia, la cantidad adeudada solo será satisfecha mediante la venta de la propiedad en pública subasta. Por tanto, la acumulación de los sucesores de Gregorio Velázquez Castro como partes indispensables del litigio era vital para salvaguardar sus derechos propietarios, y para garantizar un proceso justo, el cual se ventile exclusivamente en torno al bien inmueble objeto de ejecución de hipoteca, tal como se establece en el pagaré y en la Escritura de Hipoteca.

En el último error planteado, la parte peticionaria alega que incidió el foro de origen, al no establecer que la Declaración Jurada con la cual se autorizó el emplazamiento por edicto, no acreditó gestiones particularizadas suficientes para emplazar a los ocho (8) codemandados. Es norma reiterada, que la Declaración Jurada que se presenta a los fines de sostener la legitimidad de un emplazamiento mediante edicto, debe contener hechos demostrativos de la diligencia de la parte demandante y no meras generalidades. Siendo así, la Declaración Jurada que obra en autos es insuficiente. Veamos.

Surge de la Declaración Jurada que la parte recurrida realizó una búsqueda en internet para cada uno de los demandados-

---

[6] Véase, págs. 1-11 del apéndice del recurso.

peticionarios. Sin embargo, la parte recurrida meramente menciona plataformas digitales sin mayor detalle. Así pues, la parte recurrida no menciona la forma en que colocó los nombres de cada codemandado, ni los resultados que obtuvo en la búsqueda. De otra parte, la declaración jurada no menciona las gestiones particulares para lograr localizar a Deborah Velázquez Oyola, Jonathan Velázquez Oyola, Eunice Velázquez Oyola y Carmen María Velázquez Vélez. La parte recurrida solo expresa al final de la Declaración de Jurada que "no he podido diligenciar personalmente ningún emplazamiento para los miembros de la sucesión demandada en el caso de epígrafe."

Es destacable que en esta controversia existen dos codemandados que son reconocidos en el ámbito de la música sacra. Uno de ellos es Abraham Velázquez Oyola y el otro es David Velázquez Oyola. Ambos tienen información de contacto accesible en distintas plataformas digitales. Además, es meritorio resaltar que en el diligenciamiento del emplazamiento no se le preguntó al familiar de los herederos la dirección de residencia de estos en el extranjero. De hecho, surge del expediente que obra en autos que, Carmen María Velázquez Vélez reside en Caguas, Puerto Rico. Por tanto, una mayor diligencia de la parte recurrida, junto al uso efectivo de los avances tecnológicos y la utilización de todos los recursos que tenía razonablemente accesibles, incluyendo que tuvo un pleito anterior contra la parte peticionaria, hubiera resultado en una Declaración Jurada suficiente. Al carecer la misma de tal suficiencia, el foro primario no tiene jurisdicción sobre la persona de la parte peticionaria.

**IV**

Al existir múltiples deficiencias procesales, las cuales vician de nulidad la sentencia dictada en rebeldía, toda vez que, existe falta de jurisdicción sobre la persona de la parte peticionaria y ausencia de parte indispensable, determinamos expedir el auto solicitado y revocar

la *Resolución* emitida y notificada, el 15 de mayo de 2023, por el Tribunal de Primera Instancia. Como se establece en el caso de *Neptune Packing Corp. v. Wackenhut Corp.*, 120 DPR 283, 293 (1998): "[s]omos Tribunal de Justicia y aunque la justicia se pinta ciega, como símbolo de su imparcialidad, los tribunales que la imparten deben tener los ojos bien abiertos para impedir que ella se frustre. Cuando de hacer justicia se trata, no puede haber moldes técnicos que aprisionen los remedios justos."

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones